POWER PACKING COMPANY v. CHESTER A. BORUM.

Middle Section. March 14, 1928.

Petition for Certiorari denied by Supreme Court, July 14, 1928.

164

Bass, Berry & Sims and Levine & Levine, of Nashville, for plaintiff in error.

Seth M. Walker and Pitts, McConnico & Hatcher, of Nashville, for defendant in error.

FAW, P. J. On July 6, 1921, about two o'clock in the afternoon, an automobile truck owned by the Power Packing Company (hereinafter called defendant) and driven at the time by an employee of defendant engaged in defendant's business, collided with a motorcycle on which Chester A. Borum (hereinafter called plaintiff) was riding, and, as a result of the collision, plaintiff suffered serious and permanent injuries to his person, for which he brought this suit against defendant in the circuit court of Davidson county, on December 9, 1921, to recover damages, laid in the declaration at $25,000. After pending in the circuit court for almost five years, the case was tried to a jury, in the month of October 1926, on the issues made by defendant's plea of not guilty to the plaintiff's declaration, and the jury found the issues in favor of the plaintiff and assessed his damages at $15,000.

The trial judge overruled a motion for a new trial on behalf of the defendant, and the defendant brought the case to this court by an appeal in the nature of a writ of error and has assigned errors here.

The first assignment is that the trial court erred in refusing to grant a new trial on the ground that there is no evidence to sustain the verdict of the jury.

At the time of the collision which gave rise to this law-suit plaintiff was a motorcycle officer of the Metropolitan Police Force of the City of Nashville and in the line of his duty as such, and the defendant was a Tennessee corporation engaged in slaughtering and cutting up beef cattle, hogs and sheep, and selling the products to retailers. The driver of defendant's truck, A. M. Rottero, was making his customary daily trip for the purpose of delivering meat to retail dealers in the City of Nashville. He was accompanied by a "helper," Dan Taylor, who was seated beside Rottero in the truck.

The collision occurred on Sixteenth avenue, South, between Division street and Demonbreun, and a few feet south of the junction of

Demonbreun street with Sixteenth avenue. The general direction of Sixteenth avenue is north and south. Defendant's truck was moving northward and plaintiff's motorcycle was going southward. Defendant's truck, coming from the east, entered Sixteenth avenue from Division street and turned north. Plaintiff entered Sixteenth avenue from Broadway and had proceeded south on Sixteenth avenue a little more than two blocks when, the truck and motorcycle collided. The distance from Division street to Demonbreun street is about one hundred twenty-three feet. In the block between Division and Demonbreun streets, Sixteenth avenue is thirty-two feet from curb to curb.

In his declaration plaintiff predicates his right of action upon alleged negligent operation of defendant's truck by Rottero, the driver, as the proximate cause of personal injuries to plaintiff. The sufficiency of the declaration to state a good cause of action is not questioned. The verdict for plaintiff implies that the jury found that defendant's truck driver was negligent as alleged in the declaration, and that such negligence was the proximate cause of plaintiff's injuries. If there is any evidence reasonably tending to prove the material averments of the declaration, the verdict of the jury, approved by the trial judge, is conclusive on this court, and we must disregard all countervailing evidence. The verdict in this case has settled all conflicts of testimony in favor of the plaintiff. Fairbanks, Morse and Co. v. Gambill, 142 Tenn., 633, 641, 222 S. W., 5; Compress Co. v. Insurance Company, 129 Tenn., 586, 598, 167 S. W., 859; Railroad v. Leazer, 119 Tenn., 1, 5, 107 S. W., 684; Kirkpatrick v. Jenkins, 96 Tenn., 85, 87, 33 S. W., 819; Railroad v. Abernathey, 106 Tenn., 722, 728, 64 S. W., 3; Railroad v. Kenley, 92 Tenn., 207, 219, 21 S. W., 326.

Moreover, the plaintiff, as the successful party below, is entitled to the benefit of all legitimate inferences favorable to him which the jury could reasonably draw from the evidence tending to support the averments of the declaration. Lumber Co. v. Blanks, 118 Tenn., 627, 631, 102 S. W., 79.

Plaintiff's declaration contains three counts. In the first count it is alleged that, at and immediately prior to the collision, defendant's driver was operating defendant's truck at an unlawful, negligent, dangerous and reckless rate of speed, to-wit: in excess of twenty miles per hour, in violation of section 3, of chapter 173 of the Public Acts of 1905, which section provides that:

"No automobile shall be run or driven upon any road, street, highway, or other public thoroughfare at a rate of speed in excess of twenty miles per hour; provided, that any municipality shall have the authority to prescribe a lower maximum rate of speed within its corporate limits."

In the second count, it is alleged that, at and immediately prior to the collision, defendant's truck was being driven by defendant's driver at an unlawful, negligent, dangerous and reckless rate of speed, to-wit: in excess of fifteen miles per hour, in violation of section 18 of the ordinances of the City of Nashville regulating traffic on the streets, which ordinances provide that no vehicle shall exceed a greater speed than fifteen miles per hour on certain named streets, one of which is Sixteenth avenue, South; that defendant's truck was being so driven on "the western or illegal side" of Sixteenth avenue, South, in violation of sections one and two of the aforesaid Municipal Traffic Ordinances of the City of Nashville, which provide that (a) a vehicle, except when passing a vehicle ahead, shall keep as near the righthand curb as possible;" and (b) "a vehicle meeting another shall pass to the right;" that defendant's truck turned from Division street into Sixteenth avenue, South, in violation of section four of said Municipal Traffic Ordinances which section provides that "a vehicle turning into another street to the right shall turn the corner as near the righthand curb as practicable."

In the third count (known in the record as the common law count), it is alleged that:

"At and immediately prior to the collision aforementioned, the said defendant company's truck was being driven by the said defendant company's agent, servant and driver upon said Sixteenth avenue, South, at a negligent, dangerous and reckless rate of speed, to-wit: In excess of ———— miles per hour, and was being so driven without regard to or observance of the precautions customarily used by ordinarily prudent and careful drivers of automobile trucks in that it was being driven around a curve upon the inside of said curve, was being driven to pass a vehicle it was meeting upon its left hand or improper side, and was being so driven upon a crowded and much used street, avenue and through thoroughfare of a populous city. By reason of all the foregoing unlawful, negligent, dangerous and reckless acts of defendant company's agent, servant and driver, the said truck was beyond the control and management and thus and thereby collided with and crashed into the motorcycle ridden by plaintiff, with terrific force, hurling plaintiff and the motorcycle a distance of many feet onto the eastern sidewalk of said avenue."

We have carefully read all of the evidence in the somewhat voluminous record sent up in this case. There are sharp conflicts in the testimony bearing upon a number of material and determinative issues of fact, but, in view of the established rule limiting the scope of our investigation of facts to an inquiry as to whether there is any material evidence to support the verdict, it is unnecessary, and would be a useless extension of this opinion, for us to state herein the

evidence introduced by the parties in support of their respective contentions.

The plaintiff Borum and his witnesses Archie Combs and Jack Clay testified that defendant's truck was moving at a rate of speed in excess of twenty miles per hour. This was a violation of the State law in force at that time, and also a violation of the aforementioned Municipal Ordinance forbidding vehicles to move on Sixteenth avenue, South, at a rate of speed in excess of fifteen miles per hour; and in thus driving at an unlawful rate of speed the driver of the truck was guilty of negligence per se.

According to the clear and explicit testimony of Borum, Combs and Clay, defendant's truck was driven from Division street almost to the point of collision near Demonbreun street, on the west side (its left side) of Sixteenth avenue, South, and so close to the west curb that it was impossible for plaintiff's motorcycle to pass between the truck and the curb. This was a violation of the Municipal Traffic Ordinances beforementioned.

Borum, Combs and Clay also testified that there were no automobiles parked on Sixteenth avenue, South, in the block between Division and Demonbreun streets, between the time defendant's truck entered Sixteenth avenue, South, and the time the collision occurred. (This latter testimony was material in view of certain testimony of witnesses for defendant that there was an automobile parked on the east side of Sixteenth avenue, South, near the northeast corner of Division street and Sixteenth avenue, South, which forced Rottero to drive on the west side of Sixteenth avenue, South, at that point; and that there was another automobile parked on the west side of Sixteenth avenue, South, a few feet south of the point of collision, which rendered it physically impossible for defendant's truck to have approached plaintiff on the west side of the street as stated by plaintiff and his witnesses.)

Plaintiff and his witnesses also testified that no automobiles or other vehicles passed defendant's truck from the time it entered Sixteenth avenue at Division street until it collided with plaintiff's motorcycle.

It seems obvious that there is material evidence that defendant's driver was guilty of the negligent conduct with which he is charged in the first and second counts of the declaration. We are also of the opinion that there is ample evidence in the record to carry the case to the jury and support a finding, under the third count, that defendant's driver was not operating defendant's truck in an ordinarily careful and prudent manner at and immediately before the time of the collision in question.

It is abundantly shown by undisputed evidence that the impact of defendant's truck inflicted serious and permanent injuries upon the person of plaintiff, and, upon the evidence in the record, it was for

the jury to say whether the aforesaid negligence of defendant's driver was or not the proximate cause of the collision. 22 R. C. L., p. 148, sec. 31.

It is insisted for defendant that if it be found that there is evidence to support a finding that defendant's driver was negligent and that such negligence was a proximate cause of the collision, nevertheless plaintiff was not entitled to a verdict in his favor because (defendant contends) plaintiff was guilty of negligence which contributed, as a proximate cause, to bring about the collision and the resulting injuries to plaintiff. If the record supports this contention of defendant, the verdict and judgment cannot be sustained. That is to say, if it affirmatively appears from undisputed evidence, with all reasonable inferences to be drawn therefrom, that plaintiff was guilty of proximate contributory negligence, his action is barred as a matter of law. Railroad v. Williford, 115 Tenn. 108, 115, 88 S. W. 178; Chattanooga Light and Power Co. v. Hodges, 109 Tenn., 331, 341, 70 S. W., 616; Traction Co. v. Brown, 115 Tenn., 323, 331, 89 S. W., 319.

Where the plaintiff and defendant are each guilty of acts of negligence which together constitute the proximate cause of the injury, the negligence of plaintiff, however slight, bars a recovery. Grigsby v. Bratton, 128 Tenn., 597, 604, 163 S. W., 804.

But "the issue or issues of negligence and contributory negligence are as a rule to be determined by the jury, and ordinarily should not be disposed of by the court in a peremptory manner." 20 R. C. L., p. 166, sec. 140.

If plaintiff and his witnesses Combs and Clay are to be believed (and we must assume that the jury accepted their testimony), plaintiff was driving his motorcycle at a prudent and lawful rate of speed as he approached the scene of the accident.

It is argued for defendant that ordinary care demanded that plaintiff stop his motorcycle and step up on the sidewalk when he saw that there was not room for his motorcycle to pass between defendant's truck and the curb. "Ordinary care is that degree of care which a person of reasonable prudence would exercise under a given state of facts. . . . What a person of reasonable prudence would have done under the same or similar circumstances must be determined by the jury from their knowledge of mankind, and of how persons of reasonable prudence usually deport themselves in relation to their surroundings." Railroad v. Wade, 127 Tenn., 154, 158-9, 153 S. W. 1120.

Plaintiff's testimony, supported in material respects by the testimony of Combs and Clay, is, in substance and effect, that when he rounded a curve or "shoulder" in Sixteenth avenue, South, opposite the mouth of Demonbreun street (which terminates at the east side of Sixteenth avenue, South), and was confronted by defendant's

truck approaching him at a rapid rate of speed on his (plaintiff's) proper side of the street and so close to the curb that plaintiff could not drive his motorcycle between the truck and the curb, he realized that a collision was imminent, and that he had but a moment of time in which to reach a decision as to the best course to pursue in order to avert a collision, and, as he then saw it, the only thing left for him to do was to "cut to the left," and thus get out of the way of the truck. Plaintiff says that there was a "high curbing there" (on the west side of Sixteenth avenue, South) and he "couldn't jump up on that," and that, when the truck was within ten or twelve feet of him, he turned his motorcycle to his left, toward the east side of the street, but about the same time the truck was turned to its right, diagonally across the street, and when plaintiff was proximately in the center of the street, the front of the truck struck the right side of the motorcycle and plaintiff's right leg below the knee with such force that plaintiff and the motorcycle were thereby hurled to and upon the curb at the east side of Sixteenth avenue, South.

Whether plaintiff had time to stop his motorcycle, dismount and step up on the sidewalk, and, if he did have time to reach a place of safety in that way, whether an ordinarily prudent person, situated as plaintiff was, would have adopted that means of escape from the impending collision, and whether an ordinarily prudent person, when confronted with sudden peril, or emergency, such as that which confronted plaintiff, would have pursued the course which plaintiff followed, were all questions for the jury to determine from the evidence.

It is well settled in this State, and in many other jurisdictions, that one who, through the negligence of another and not through his own negligence, suddenly finds himself in a position of peril, and is compelled to act instantly to avert an injury to himself, is not guilty of negligence if he makes such a choice as a person of ordinary prudence placed in such a position might make, even though he did not make the wisest choice. Southern Railway Co. v. Whitlock, 136 Tenn., 266, 271, 188 S. W. 1151; Chattanooga Electric Railway Co. v. Cooper, 109 Tenn., 308, 311, 70 S. W., 72; Marble Co. v. Black, 89 Tenn., 118, 125, 14 S. W. 479; Railroad v. Gurley, 12 Lea 46, 62-63; Moody v. Gulf Refining Co., 142 Tenn., 280, 293, 218 S. W. 817; Cullom v. Glasgow, 3 Tenn. App. Rep., 443, 449; Note, 27 A. L. R., p. 1197 et seq.

In 20 R. C. L., p. 29, this rule is stated as follows:

"One who in a sudden emergency acts according to his best judgment, or who, because of want of time in which to form a judgment, omits to act in the most judicious manner, is not chargeable with negligence."

The statement of the rule as just quoted from Ruling Case Law was approved in Moody v. Gulf Refining Co., supra.

In 22 R. C. L., p. 145, Sec. 29, it is said:

"When a person has been put in sudden peril by the negligent act of another, and, in an instinctive effort to escape from. that peril, either suffers injury himself, or does injury to a third person, the negligent act is the proximate cause of the injury, and it is immaterial that under different circumstances he might and ought to have seen and avoided the latter danger."

In the case of Roofing & Mfg. Co. v. Black, 129 Tenn., 30, 36-37, (164 S. W. 1183), it is said:

"The question of contributory negligence, as well as the question of negligence, is ordinarily for the jury. Even though the facts be undisputed, if intelligent minds might draw different conclusions as to whether, under circumstances conceded, the conduct of a plaintiff was that of an ordinarily prudent man, the matter should be left to the jury. The court should draw no inference when in doubt, but only in those cases where the evidence is without material conflict, and such that all reasonable men must reach the same conclusion therefrom. It is only in cases where the evidence is susceptible of no other fair inference that the court is justified in instructing the jury, as a matter of law, that the plaintiff has been guilty of contributory negligence which would bar his recovery."

There is, in our opinion, ample evidence in the record which, if accepted by the jury in that aspect most favorable to plaintiff of which it is reasonably susceptible, is sufficient to support a finding that negligence of defendant's driver, Rottero, as alleged in plaintiff's declaration, was the proximate cause of the collision in question and the resulting injuries to plaintiff, and that plaintiff was not guilty of any proximate contributory negligence. As said in the case of Railroad Co. v. Johnson, 7 Hig. 458, 463:

"This is not a case of inherently unbelievable testimony, but rather whether the one or the other of the opposing witnesses should be accepted as having told the truth." The defendant's first assignment of error is overruled.

Passing the second and third assignments for the present: The fourth assignment of error is that "the court erred in admitting and declining to exclude over the objection of the defendant certain testimony of the plaintiff, Chester A. Borum, as follows:"

Then follows, in the assignment, a quotation, from the bill of exceptions, of a series of questions, or rather repetitions of the same question, interspersed with objections by defendant's counsel and rulings by the court, concluding with the court's overrulement of the objection, the defendant's exception to the court's ruling, and citations to certain pages of the transcript. The assignment contains no quotation or statement of the answer of the witness or any testimony of the witness.

In their reply brief, plaintiff's counsel challenge the sufficiency of this assignment because it does not contain the answer of the witness. The published rules of this court, with reference to assignments of error, require, among other things, that "when the error alleged is to the admission or rejection of evidence, the specification shall quote the full substance of the evidence admitted or rejected, with citation of record where the evidence or ruling may be found." 151 Tenn., p. 815. It is obvious that the fourth assignment does not conform to the rule just quoted, and is, in that respect, insufficient as an assignment of error.

However, it appears from the page of the record cited in the assignment that, immediately following the ruling of the court and the exception of defendant, the witness answered the question. The question asked by plaintiff's attorney, the objection thereto by defendant's attorney, the ruling of the court and the answer of the witness, all appear from the following excerpt from the bill of exceptions, viz:

"By Mr. Walker: Q. You have stated, Mr. Borum, as I understood you, that while you were on the right side of the street and as this truck approached on the left side and at the time you appreciated the rate of speed it was making, twenty or twenty-five miles an hour, that you cut your motorcycle on which you were riding, over across the street towards the left hand side, now state to the jury whether or not that you did what you thought, and what appeared to you, at the time, to be the best thing to save this truck hitting you and avoiding a collision?

"Mr. Bass: We want to object further to the question on the ground that the jury is to determine whether or not he did that which a reasonably prudent man would have done under the circumstances, and that is the test.

"By the Court: That is all true, but he has got the right to answer this and show whether or not he did the best he could do. It is true a man may do the best he can do and still not do the best thing, that is for the jury to say whether or not it was the best thing, but he has the right to say whether he thought it was the best thing or not."

Objections overruled. Defendant excepted.

"A. The way I saw it, that was the only thing left for me to do. That high curbing there, I couldn't jump up on that and I had to cut to the left to get out of the way of this truck."

Flowing from the "unforeseen emergency" rule to which we have heretofore referred in the discussion of the first assignment of error, the state of mind of the plaintiff and the motive which prompted his act of turning suddenly and sharply to his left, as he did, were material inquiries, relevant to the issues, and it was competent for him to testify directly upon that point.

In the second Volume of the 2nd Edition (1926) of Jones on Evidence, at Section 709, a multitude of adjudged cases are cited in support of the rule that "where otherwise material and relevant to the issue, a party may testify directly as to motive, intent or belief." From these cases the author deduces the conclusion that, "at this date it is the prevailing rule, sustained by the great weight of authority, that whenever the motive, intention or belief of a person is relevant to the issue, it is competent for such person to testify directly upon that point, whether he is a party to the suit or not."

Professor Wigmore, in his comprehensive treatise on the law of evidence, adopts the same view, and says that "in only one jurisdiction (Alabama) has any clear sanction been given to a rule that parties or other persons are disqualified to testify to their own intent or motive—in all others where the question has been raised there is a general repudiation of that notion in all its aspects." Wigmore on Evidence, Vol. 1, Sec. 581. The fourth assignment of error is overruled.

Through its fifth assignment the defendant complains of certain remarks made by the trial judge (during the course of the trial and in the presence of the jury) to Robert Malone, colored, a witness for defendant. The witness repeated three times, in his answers to as many questions, that he didn't "mean to tell nothing but the truth," whereupon the court said:

"Robert, every single witness that goes on the stand is presumed to tell the truth, now don't repeat that. It is ignorance on his part and I am trying to help him to save time. You are here to tell the truth and it is presumed that you are telling the truth, just tell it and answer the questions and don't keep on lecturing about how much you are telling the truth."

Again, in the course of cross-examination, the witness Malone was seemingly parrying, and attempting to evade a direct answer to a question which could be answered "yes" or "no," and, after the failure of repeated attempts of plaintiff's attorney to get an answer from the witness, the court said: "You've got sense, answer yes or no."

The judge presiding over a jury trial should not express or intimate an opinion as to the credibility of a witness, for the jury are the sole judges of the credibility of the witnesses. 26 R. C. L., p. 1027, Sec. 28; 38 Cyc., pp. 1320-1321; Graham v. McReynolds, 90 Tenn. 673, 685, 18 S. W., 682.

"However, it may often happen in the course of a trial that some occurrence will warrant comment by the court on the conduct of a witness—perhaps by way of censure and perhaps by way of commendation. Such comment when within reasonable bounds and appropriate to the character of the occurrence can hardly be regarded as a legal error which is the foundation of

an exception. Where a statement that a witness is an unwilling one is made in response to an objection to leading questions propounded by the counsel who called the witness, this is a necessary comment which is not objectionable. And where a witness has testified that he is separated from his wife, a collateral matter, a remark in excluding further examination along this line that 'it is bad enough to know that she quit him' has been held not a comment on the credibility of the witness. And where a witness hesitates in answering simple questions it has been considered not improper for the court to state that it would seem as though a man who had been Justice of the Peace would have sense or intelligence enough to answer the questions.'' 26 R. C. L., p. 1028.

In the light of the record bearing upon the manner in which the witness Malone demeaned himself on the witness stand, we are of the opinion that there was no error—certainly no reversible error—in the remarks of the trial judge criticized by defendant's fifth assignment of error, and that assignment is overruled.

It is proper to add, in justice to the witness Malone, that we do not think he was wilfully contumacious; but we do think that his conduct justified the intervention of the presiding judge.

The sixth assignment is subject to the same infirmity as the fourth assignment, supra, in that, it purports to be based on the admission, over defendant's objection, of testimony of plaintiff Borum offered and admitted in rebuttal, but the answer of the witness is not in the assignment, although the assignment contains the question asked by plaintiff's counsel, the objections offered by defendants's counsel, and the ruling of the sourt.

In strictness this assignment is insufficient because of its non-conformity to the rules of this court; but as we find the answer of the witness on the pages of the record cited in the assignment, we have considered the question of the admissibility of the testimony, which testimony will appear from an excerpt from the bill of exceptions, as follows:

''Q. Did or not Rottero come to the City Hospital about two months after the accident while you were sitting there in a rolling chair, and say this, or in substance, this, to you, that he, Rottero, was not concerned in any suit that you might bring against the Power Packing Company, that he supposed that you, Borum, was going to bring a suit against that company, but that he, Rottero, had a case in the Police Court, a charge against him on account of driving the truck that caused the accident, and that he, Rottero, would have to pay that fine and that he, Rottero, wanted you, Borum, to be easy on him in that case, that is, in the Police Court case.

"By Mr. Bass: We object to that on this ground—You may lay grounds for contradiction on material matters and call witnesses to contradict it. If they had asked Rottero, if he didn't say, for instance, he was driving thirty miles an hour. They have a right to contradict him on that, or if they had asked him if he didn't fail to turn to the right, or repeat something material to the issue, you may lay grounds and call in witnesses to contradict, but on immaterial matters, when you ask a witness, you are bound by his answer, and there is nothing in that question that has been asked, and there was nothing asked Rottero as to any conversation he had out there as to how this accident occurred, therefore, it is incompetent to permit this witness to be recalled in rebuttal to contradict the witness Rottero.

"By Mr. Levine: For the further reason that the witness, answer is in the record and it was this, 'if I did, I don't remember it, I don't know whether I did or not, I may have, I don't remember that,' therefore, there is no ground for contradiction."

After further argument of counsel, the court said:

"I am ready to rule, gentlemen of the jury, I am going to explain my ruling in this way. Insofar as Rottero's alleged statement to the plaintiff at the hospital amounts to an admission of negligence on his part, it is not to be considered as evidence against this defendant, but it may be considered by the jury when you come to weigh up Mr. Rottero's credibility, whether or not he has made conflicting statements, and that is as far as it is competent.

"By Mr. McConnico: That is as far as we offer it."

Defendant excepted to the ruling of the court.

"By Mr. Walker: Q. Did he, or not, make the statement I have read to you? A. He did, yes, sir.

"Q. You know he made it? A. Yes, sir."

In order to admit other evidence of impeaching statements, it is not indispensable that the witness should deny having made them. If he does not remember having made the statements, and will neither admit nor deny having done so, the foundation is sufficiently laid. Jones on Evidence, 2nd Ed., Vol. 6, Sec. 2405; Cole v. State, 6 Baxt. 239, 241; Reagan v. Mabry, 8 Baxt. 168.

If Rottero was, as he testified at the trial, without fault in the manner in which he was driving the truck at the time in question, there was no reason why he should pay a fine, and no occasion for him to ask plaintiff Borum to "be easy on him" in the Police Court case. There was, therefore, a real inconsistency between the aforesaid statement and request of Rottero to Borum at the hospital and Rottero's testimony at the trial. The existence of this inconsistency rendered the testimony of Borum concerning such statement and

request of Rottero competent as bearing on the credibility of Rottero, and it was expressly offered and admitted for that purpose alone. Holder v. State, 119 Tenn., 178, 219; Wigmore on Evidence, Vol. 2, Sections 1040-1041. The sixth assignment of error is overruled.

In his charge to the jury the trial judge defined "proximate cause," beginning his definition with this sentence: "The proximate cause of an injury is that act or omission which causes or fails to prevent the injury." The trial judge was doubtless undertaking to give the jury the definition of proximate cause as that phrase is defined in the case of Deming & Co. v. Compress Co., 90 Tenn., 306, 353 (17 S. W. 89), and other cases, wherein the Supreme Court said: "The proximate cause of an injury may, in general, be stated to be that act or omission which immediately causes or fails to prevent the injury" etc.

Through its seventh assignment of error, defendant says that the omission by the trial judge of the word "immediately," and his failure to use it as it appears in the above quotation from Deming & Co. v. Compress Co., supra, was error. We do not think that there is any reasonable possibility that the defendant was prejudiced by the omission of the word "immediately" in the connection above indicated. In a subsequent part of the same paragraph the court further explained the definition previously given by saying: "Proximate cause, as above defined, does not necessarily mean that which is last in point of time, but it means that which is the procuring and efficient cause of the accident."

If, as thus instructed, the jury sought and found "the procuring and efficient cause" of the collision and injury, they applied a correct legal definition of proximate cause to the facts of the case. Grigsby v. Bratton, 128 Tenn., 597, 603, 163 S. W., 804. The seventh assignment of error is overruled.

The eighth assignment is that the court erred in charging the jury as follows:

"Now, gentlemen, the rights and the duties and the amount of care required by law of both the plaintiff and the defendant while in their respective machines on Sixteenth avenue, South, were exactly the same, both had a perfect right to use the street and both were required to observe the State statute and the city ordinances heretofore set out and referred to in a former part of this charge, the whole question being, whose negligence was the proximate cause of this unfortunate accident?"

The defendant bases its criticism of the above paragraph of the charge upon the concluding clause thereof, viz: "The whole question being, whose negligence was the proximate cause of this unfortunate accident."

It is said, for defendant, that the statement last quoted "was highly prejudicial to the defendant as it assumes in the first instance that

one or both parties were guilty of negligence and it is for the jury to determine which of the parties is guilty of negligence.''

There was no effort by either party to show at the trial that the collision was merely a fortuitous accident, without fault on the part of either plaintiff or defendant, and there was no sort of reasonable way in which the jury could have arrived at that conclusion from the evidence. It was, therefore, not possible, under the proof, that harm could result to defendant from an assumption that the proximate cause of the collision was negligence of one or both of the parties —it being left to the jury, under a charge otherwise proper, to determine the question. N. C. & St. L. Railway Co. v. Brown, 1 Hig., 179, 182; Powers v. State, 117 Tenn., 363, 369, 97 S. W., 815. The eighth assignment of error is overruled.

Through its ninth and tenth assignments defendant assigns error upon two connected paragraphs of the charge, which paragraphs will here be quoted together, as follows:

"Again, gentlemen, if you shall find that the plaintiff was traveling south on Sixteenth avenue, with his motorcycle going at a high and unlawful rate of speed in violation of the statute or the city ordinances, above referred to, so that the defendant's truck driver could not avoid striking him by the exercise of ordinary care, or if the plaintiff was following an automobile going south on Sixteenth avenue just before meeting the defendant's truck, and if in an effort to pass said automobile the plaintiff turned to his left and out into the street in front of the defendant's oncoming truck, if the truck was on its right hand side of the street, so suddenly that the defendant's truck driver could not avoid striking him by the exercise of ordinary care, then the defendant would not be liable in this case, and your verdict should be in the defendant's favor.

And this would be the law even if the defendant's truck was at the time out in the middle of Sixteenth avenue, provided it had become necessary on account of the traffic or parked automobiles for defendant's truck driver to drive said truck out in the middle, or even beyond the middle of Sixteenth avenue, South, and provided further that the defendant's truck driver had not had time to regain his lawful position near the right hand curb by the exercise of reasonable and ordinary care, which has been hereinbefore defined to you."

The criticism offered to this part of the charge is that "the effect of the foregoing language of the charge was to instruct that contributory negligence of the plaintiff would not be sufficient to bar a recovery unless defendant was at the same time exercising ordinary care and guilty of no negligence." But, in both prior and subsequent parts of the charge, the court instructed the jury, in language too

plain to be misunderstood, that the plaintiff could not recover if he was guilty of negligence which proximately contributed in any degree to cause the collision and the resulting injuries to plaintiff. When the charge is considered as a whole, we do not think it was reasonably possible for the jury to have attributed to it the meaning and effect claimed by defendant's counsel as indicated by the above quoted excerpt from their brief. Elrod v. Town of Franklin, 140 Tenn., 228, 239, 204 S. W. 298. The ninth and tenth assignments of error are overruled.

The eleventh assignment is that the court erred in charging the jury as follows:

"If the plaintiff was proceeding southward on his right hand side, or the western side of Sixteenth avenue in compliance with the ordinances of said city, and in the exercise of ordinary care upon his part, and the automobile truck of defendant, in violation of said city ordinances, continued to approach plaintiff on the same side of said street in such manner and at such a rate of speed that plaintiff, while in the exercise of ordinary care upon his part, was put and found himself in a place or position of sudden peril by the negligent act or conduct of the driver of defendant's said automobile truck, so that the plaintiff, in the exercise of ordinary care for his own protection, reasonably and honestly found and concluded that in order to extricate himself from such peril, and in order to avoid being run upon by the approaching automobile truck it was necessary for plaintiff to turn out to his left and attempt to pass said truck on plaintiff's left hand side thereof, then such conduct on the part of the plaintiff would not amount to contributory negligence as a matter of law, so as to deprive the plaintiff of any recovery you would otherwise allow; but, in such case, it would be for the jury to say, under all the circumstances, whether or not the plaintiff was guilty of any failure to exercise ordinary care for his own protection in so turning to his left in an effort to avoid being struck by said approaching automobile truck, if you find that such occurred; and if the jury should find the plaintiff was in the exercise of ordinary care in so turning out to the left to avoid being struck, then he would not be guilty, under such circumstances, of any violation of the city ordinance which provides that a vehicle meeting another shall pass to the right, so as to prevent the plaintiff from being entitled to a recovery of damages which you would otherwise allow by your verdict."

We are of the opinion that the above quoted part of the charge is in harmony with the authorities on the doctrine of "unforeseen emergency" cited in our discussion of the defendant's first assignment of error, ante, and that the criticisms offered on behalf of defendant in

its brief in support of the eleventh assignment of error are not well made, and that assignment is overruled.

Through its twelfth, thirteenth, fourteenth, fifteenth, sixteenth and seventeenth assignments of error the defendant complains of the action of the trial court in refusing to charge certain written instructions, numbered one, two, four, five, six and eight, requested by the defendant after the general charge had been given to the jury and before the jury retired to consider of their verdict.

Counsel for defendant concede, in their brief, that the court did not err in refusing to charge the first, fourth and sixth requests, and this concession is, we think, justified by the record. The twelfth, fourteenth and sixteenth assignments based on the refusal of these three requests are therefore overruled.

The instructions contained in the second, fifth and eighth requests are sufficiently embodied in the charge of the court given to the jury. We do not understand that defendant's counsel claim that the instructions requested and refused were necessary to correct affirmative errors in the charge. Their insistence is, in substance, that the charge was not sufficiently full and specific on the propositions embraced in the second, fifth and eighth requests. We do not find anything lacking in the charge on the propositions thus indicated which was, in our opinion, necessary to guard the legal rights of the defendant. The charge of the court presents, in a clear and understandable manner, the rules of law applicable to the issues in this case as presented by the pleadings and evidence, and, in our opinion, it is not subject to the criticism made that it is confusing and contradictory. Whatever inaccuracies the charge contains are in forms of expression of an inconsequential character, and not such as would mislead the jury; and a judgment will not be reversed for errors of the trial court which did not affect the result of the trial to the prejudice of the complaining party. Public Acts of 1911, Ch. 32; Hamblin v. State, 126 Tenn. 394, 400, 150 S. W., 89; Harness v. State, 126 Tenn., 365, 367, 149 S. W., 911; Railroad v. Martin, 112 Tenn., 266, 287, 87 S. W. 418; Lowry v. Southern Railway Co., 117 Tenn., 507, 514, 101 S. W., 1157. The thirteenth, fifteenth and seventeenth assignments of error are overruled.

Recurring now to the second and third assignments of error: These assignments are that (a) "the verdict was excessive", and (b) "the verdict was so excessive as to indicate passion, prejudice and caprice on the part of the jury."

The jury returned a verdict of $15,000, and this was approved by the trial judge, who (in disposing of that part of the defendant's motion for a new trial which challenged the amount of the verdict as excessive) said:

"The only thing I thought worthy of consideration by the court in this case was the amount of the verdict, and I don't care to hear from counsel on that. Every injury, personal injury, is accompanied, that is, to a rational being, is accompanied by some mental pain as well as physical pain; and the law is, that a man injured if he has got a right to recover at all he has got a right to recover for mental pain as well as physical pain might be more intense than the mental pain, and sometimes the mental pain might be more than the physical pain. There was a tribunal over there supposed to be men of common sense. I don't know how much or whether any of their verdict was superinduced by argument of counsel and remarks of the court referred to by counsel for the defendant, which I think were harmless, and which were necessary, in my opinion, to jog that witness up and let him go on and answer the main question, and I so expressed to the jury that my object is to save time. They are supposed to have sensed that slightly. If they did not, they oughtn't to be in the box. Now, I don't know how much of their verdict the jury put on physical pain and I don't know how much they put on mental pain. I know ordinarily if a fellow has his leg knocked off, and it has got to be cut off and there is no more about it, he has got a reasonable expectation of recovery; and there is more mental pain there too. But here is a young man that for about three weeks was told by two mighty fine doctors that you haven't got over one chance in a hundred to live if we don't cut it off. That is what at different times his doctors advised him. Maybe a man that is injured has got some personal rights about his living members. I expect this boy had to choose, and I expect he has got a natural right to choose what chance he will take, and he didn't want to give up his leg, and for about three weeks he was told constantly, 'you have got but one chance in a hundred.' Now if there ever was any intense mental pain he endured it for those three weeks. I can't say that the jury were partial to him. I have examined myself on that very subject. I didn't know this young Borum until he came in the court room; never saw him before in my life that I know of; of course everybody knows his daddy, Sam Borum, and I may have voted for him when he was Sheriff, but the last four or five or three or four times he ran, I didn't. I can't see anything to lead the jury off on the personality of his family connections. The argument made here by Mr. Levine that because this young man gets the same job and drawing the same salary there should be a remittitur or a much smaller verdict. If their argument is sound that don't take away from him any of this pain he has suffered, either mental or physical. The fact that he is doing just as well now as he did

before, if that argument was sound if a young man who was fit for nothing in the world but some daily labor would lose his leg and that would force him, if he couldn't maul rails any more, or build any more fences, to prepare himself for one of the professions, and fit himself to earn ten times more money than he did before, that he oughtn't to have anything, whatever pain you may have suffered, mental or physical; wipe that out, 'you are earning more money than you ever did in your life.'

"I don't think that is sound argument. The jury is the tribunal selected by the law to pass on how much a man can suffer mentally and physically. That is their business in the first instance. Now, it is up to me as the thirteenth juror, and I have never been put to the extremity that the plaintiff was put, I can only imagine how much he has suffered physically and mentally and the regular lawful tribunal after hearing all the evidence has passed on it and said what they thought was about right, and unless I think they were misled in some way, by the charge of the court, or acted capriciously or maliciously, I oughtn't to disturb it, but just let it stay right where the proper tribunal said put it. So I overrule the motion."

In a personal injury case, such as we are now considering, the law furnishes no standard by which to measure the compensation to which a successful plaintiff is entitled, but confides the amount of the damages to be awarded to the judgment of impartial jurors, guided by the facts and circumstances of the particular case. Then, before the case comes to this court, the verdict is subject to the scrutiny of the trial judge. As said in the case of Quinn v. Railway Co. (Minn.), 46 A. L. R. 1228: "In determining whether a verdict is so excessive that a new trial should be granted, much responsibility rests on the trial judge. He is called upon to exercise a practical and sound discretion. This court does not readily substitute its judgment for his, for he is in a far better position to come to the right conclusion than we are. Properly enough, we defer to his judgment and do not interfere, unless it is fairly evident that he failed to keep the jury within the bounds of reason and common sense."

At the time he was injured plaintiff was twenty-one years of age. He enlisted in the U. S. Navy during the "World War" and served there two years. Thereafter he was employed in Toledo, Ohio, for about one year, and then returned to his home in Nashville, where he was employed about a year as floor manager in the Chalmer's Garage. In May 1921, shortly after he had attained his majority, he was made a patrolman on the Police Force of the City of Nashville, but, in a few weeks thereafter, was transferred to the motorcycle corps, in which he was serving, at a salary of $125 per month, when he received the injuries for which he sued in this case.

Before his injuries plaintiff was in perfect health. He had never had any serious illness, and Dr. Fort, in his testimony, described plaintiff as ''a perfect physical specimen from toe to head.''

Plaintiff was injured on July 6, 1921. He was carried from the scene of the collision to the General Hospital, where he remained until sometime in September following, when he was removed to his father's home, but the fractured bones of his leg had not then united and did not unite until after the first of January 1922. He was able to walk without crutches in the early Spring of 1922, and returned to duty on the police force in about eight months after he was injured—at first doing clerical work in the office, but later resuming his former duties as motorcycle officer.

Plaintiff incurred obligations for the services of Drs. Fort and Eve, physicians and surgeons, of $800.

The foregoing statement conveys no sort of adequate idea of the character of the injury inflicted on plaintiff—his physical and mental pain and suffering, his permanent injury and impairment of earning power. His injury may be described as a broken leg, but the nature of the fracture and the resulting conditions were unusually serious and painful. This is indicated by the statement of Dr. Eve that, although he had seen thousands of broken limbs in his practice of more than fifty years, plaintiff had one of the worst fractured limbs that he ever had occasion to examine or ever saw; and the undisputed testimony of Dr. Fort and Dr. Eve fully confirms the implication of this general statement of Dr. Eve.

A very material element for which, in law, plaintiff is entitled to compensation is pain and suffering, both physical and mental. The undisputed proof also shows that his injuries are permanent and his prospective earning power is permanently impaired.

The testimony of plaintiff and his witnesses with respect to the nature and extent of his injuries and his pain and suffering is undisputed.

. . . . .

Doctors Fort and Eve were not cross-examined and no other medical witnesses were introduced on the trial.

The testimony of plaintiff and his witnesses with respect to his injuries and sufferings presents the unquestioned facts of the case. When the amount of the physicians' fees ($800) is deducted, the verdict represents an allowance of $14,200 to plaintiff for his permanent injuries and impairment of earning power, and for his pain and suffering, both physical and mental. It is clear from the evidence that the plaintiff's suffering was extreme, and was far, very far, in excess of that which usually results from a broken leg.

Numerous cases are cited in the briefs as precedents bearing on the size of the verdict. On this subject precedents are useful as tending

in some degree to show the consensus of judicial opinion as to what will constitute an excessive verdict, but the cases are legion, and they are, in their facts and the views of the juries and the courts, so diverse that it would be a fruitless task to attempt to discuss them here. "A just compensation may vary widely in different cases, even when the physical injury is the same." 8 R. C. L., p. 465, sec. 32.

Many recent cases (for the years of 1916-1926) are annotated in 46 A. L. R., pp. 1230-1423, under the title "Excessiveness of verdict in action by person injured for injuries not resulting in death." The Annotator states his reason for limiting his annotation to cases since 1916, as follows:

"The marked increase in the cost of living or decrease in the purchase power of money, during the period beginning with 1916, is a factor which the courts have recognized should be taken into consideration in determining whether the damages for personal injuries are excessive (see annotations, 3 A. L. R. 610; 10 A. L. R. 179, and 18 A. L. R. 564); hence, an allowance should be made for that factor in appraising the value and effect as precedents of cases decided before that period. It is fair, therefore, to assume that a case decided before 1916 which upholds a verdict for a given amount is a precedent for the allowance of an increased amount at the present time, under conditions otherwise the same, although it is, of course, impossible to give a precise and definite formula or percentage of increase."

Upon a consideration of the record, we are of the opinion that the amount of the verdict in this case does not indicate that the jury was actuated by any improper motive or guilty of a reckless disregard of evidence, and that the verdict should not be disturbed. The second and third assignments of error are therefore overruled.

It results that the judgment of the Circuit Court is affirmed, and judgment will be entered accordingly for the amount of the judgment below, with interest thereon from the date of its rendition, and for the costs of the cause accrued in the Circuit Court. The costs of the appeal will be adjudged against the Power Packing Company and the surety on its appeal bond.

Crownover and DeWitt, JJ., concur.