KIRKPATRICK v. JENKINS.

(*Nashville.* January 25, 1896.)

1. ASSIGNMENT OF ERROR. *Insufficient, when.*

An assignment of error that the verdict is not supported by "a preponderance of testimony" is bad, as the verdict must be sustained upon the facts, if there is any material evidence to support it. (*Post, p. 87.*)

Cases cited and approved: Railroad v. Mahoney, 89 Tenn., 312; Eller v. Richardson, 89 Tenn., 576; Insurance Co. v. Norment, 91 Tenn., 1; Sparta v. Lewis, 91 Tenn., 370; Peery v. Peery, 94 Tenn., 329; Railroad v. Kenley, 92 Tenn., 208; Poole v. Jackson, 93 Tenn., 62; Scruggs v. Heiskell, 95 Tenn., 455.

2. WILL. *Not revoked by testator's subsequent verbal declarations.*

No verbal declarations of testator, after the free and voluntary execution of his will, as to his intention and wish in regard to a daughter who is not provided for therein, can operate to revoke or impair the will. (*Post, pp. 87, 88.*)

Code construed: § 3008 (M. & V.); § 2167 (T. & S.).

Cases cited and approved: Allen v. Huff, 1 Yer., 404; Marr v. Marr, 2 Head, 303; Allen v. Jeter, 6 Lea, 674.

3. SAME. *Testator's subsequent declarations, when admissible.*

Subsequent declarations of an alleged testator may be considered upon the issue of mental incapacity, but not upon the issue of undue influence, unless there is independent testimony indicating undue influence, and then only to show a condition of mind susceptible to such influence and the effect thereof upon the testamentary act. (*Post, pp. 88, 89.*)

Cases cited and approved: Peery v. Peery, 94 Tenn., 328; 3 Am. Dec., 390; 11 N. Y., 157; 4 Dutcher, 274; 99 Mass., 112; 31 Am. St. Rep., 665.

4. SAME. *Same.*

The personal and family relations of a testator, the pecuniary condition of his children, and his statements respecting them

in connection with his will, are admissible either to sustain or rebut the contention that certain inclusions or exclusions of children are unnatural, and indicative of mental infirmity. (*Post, p. 90.*)

Cases cited and approved : Peery *v.* Peery, 94 Tenn., 343; 99 Mass., 119; 17 Am. St. Rep., 552.

5. SAME. *Testator's subsequent declarations not admissible, when.*

Declarations of testator subsequent to the execution of his will, as to whether a child born to his wife was his child, and as to the circumstances of her birth, are inadmissible to rebut the contention, based on the failure to provide for such child, that the will was not the testator's voluntary act. (*Post, pp. 91–93.*)

Cases cited : 17 Ala., 55; 22 Ala., 529.

---

### FROM DAVIDSON.

---

Appeal in error from Circuit Court of Davidson County. J. W. BONNER, J.

A. G. GOODLETT, W. G. BRIEN, and A. J. CALDWELL for Kirkpatrick.

PITTS & MEEKS and STOKES & STOKES for Jenkins.

CALDWELL, J. The record in this case presents a contest over a paper writing, alleged to be the last will and testament of Samuel Jenkins, who died in 1888, leaving six children—three sons and three daughters. The alleged will gives all of the alleged testator's large estate to his three sons and their children, without so much as mentioning the names

or the existence of his daughters, or any of them. One of those daughters, Mattie B., and her husband, W. H. Kirkpatrick, deny the validity of that paper, and say that it is the result of undue influence, and that Samuel Jenkins did not have sufficient mental capacity to make a will. Verdict and judgment were for the proponent, and the contestants have appealed, and assigned errors.

*First.*—The assignment that the verdict is not supported by a "preponderance of testimony," is not well made. It is bad because it fails to present any question that can be considered by this Court. No rule of practice is more familiar and better settled than that the verdict of a jury, in a civil case, is conclusive upon this Court if there is any evidence to sustain it. *Railway* v. *Mahoney*, 89 Tenn., 312; *Eller* v. *Richardson*, *Ib.*, 576; *Insurance Co.* v. *Norment*, 91 Tenn., 1; *Sparta* v. *Lewis*, *Ib.*, 370; *Peery* v. *Peery*, 94 Tenn., 329; *Scruggs* v. *Heiskell*, 95 Tenn., 455. It follows from that rule that issues of fact passed upon by a jury in a civil case will not be considered here unless the assignment states that there is no evidence to sustain the verdict. *Railroad* v. *Kenley*, 92 Tenn., 208; *Poole* v. *Jackson*, 93 Tenn., 62.

*Second.*—Samuel Jenkins had been a partial paralytic for some years before his death. During those years he was confined to his room, and a large portion of the time to his bed. There is much testimony tending to show that, while so con-

fined, he often spoke of all his children and the disposition to be made of his property after his death, some of his declarations indicating a desire for equality among them; others being favorable to his daughters and unfavorable to his sons, and still others being favorable to his sons and unfavorable to his daughters.

As already stated, the paper offered for probate as his last will and testament gives the daughters nothing, but makes the sons and their children the sole and exclusive legatees and devisees. It consists of what purports to be an original will, dated in 1877, before he was stricken with paralysis, and two codicils, dated in 1882 and 1885 respectively, both being after he became paralyzed.

The trial Judge rightly charged the jury that "if the will of 1877 was freely and voluntarily made by the testator, and at a time when he was of sound mind, no verbal declaration of the testator, made after his attack of paralysis, as to his intention or wish in regard to his daughters, can operate to revoke his will or impair its validity." Obviously, a valid written will cannot be revoked or impaired by a mere verbal declaration of the testator. Code (M. & V.), § 3008; *Allen* v. *Huff*, 1 Yer., 404; *Marr* v. *Marr*, 2 Head, 303; *Allen* v. *Jeter*, 6 Lea, 674; Pritchard on Wills and Adm., Sec. 245.

*Third.*—Another part of the instruction to the jury is as follows: "Now, as to the alleged subse-

quent declarations of the testator, the Court charges you that such declarations cannot be looked to to establish the exercise of undue influence; but if the exercise of undue influence be established by other means, you may then look to such declarations in order to determine his mental condition at the time of making the will, and the effect of such undue influence, if actually exercised, upon his action.'' There is no error in this direction.

Though the cases are not harmonious, we think the great weight of authority, and of reason, is to the effect that subsequent declarations of an alleged testator may be considered by the jury upon an issue of mental incapacity, but that they cannot be considered upon an issue of undue influence, unless there be independent proof indicating the presence of undue influence, and then only to show a condition of mind susceptible to such influence, and the effect thereof upon the testamentary act. *Jackson* v. *Kniffen*, 2 Johnson, 31 (S. C., 3 Am. Dec., 390); *Waterman* v. *Whitney*, 11 N. Y., 157; *Boylon* v. *Meeker*, 4 Dutcher, 274 (S. C., Redf. Am. Cases on Wills, 487); *Sharler* v. *Bumstead*, 99 Mass., 112 (S. C., Redf. Am. Cases on Wills, 397); *Thompson* v. *Ish*, 99 Mo., 160 (S. C., 17 Am. St. R., 552); *In re Hess's Will*, 48 Minn., 504 (S. C., 31 Am. St. R., 665, and note 690); *Peery* v. *Peery*, 94 Tenn., 328; 1 Redfield on Wills (4th Ed.), 548, 549, 556, 557; Pritchard on Wills and Adm., Sec., 147; 27 Am. & Eng. Enc. L., 505, 506.

*Fourth.*—The trial Judge further said to the jury: "It is competent for the jury to look to any declaration of the testator in regard to the plaintiff, Mrs. Kirkpatrick, as to whether she was his child, and as to the circumstances of her birth; also, it is proper to look to any proof in regard to the separation of the testator and said plaintiff's mother, and to her not being a member of his family, and all the facts and circumstances in regard to said plaintiff and her association with her father, as furnishing a reason or motive for testator's excluding her from participation in his estate, *and as tending to rebut the contention that the will was not the voluntary act of the testator.*"

The first proposition here laid down (that is to say, the whole of the instruction last quoted, except the concluding clause, which we have italicised) is sound law. The personal and family relations of a testator, the pecuniary condition of his children, and what he may have said of them in connection with his will, are all admissible, and may be considered either to sustain or to rebut the claim that certain inclusions or exclusions are unnatural and indicative of mental infirmity. *Sharler* v. *Bumstead*, 99 Mass., 119 (S. C., Redf. Am. Cases on Wills, 405); *Thompson* v. *Ish*, 99 Mo., 160 (S. C., 17 Am. St. R., 552); *Peery* v. *Peery*, 94 Tenn., 343; 1 Redf. on Wills (4th Ed.), 549(*h*). And all of them, excepting the testator's declarations, are likewise admissible to prove or disprove undue influences.

*Fifth.*—But the last clause of that instruction, relating, as it does, unmistakably to the issue of undue influence, is not sound in so far as it refers back to, and is connected with, the introductory clause concerning declarations of the testator. It was not "competent for the jury to look to any declaration of the testator in regard to the plaintiff, Mrs. Kirkpatrick, as to whether she was his child and as to the circumstances of her birth, . . . as tending to rebut the contention that the will was not the voluntary act of the testator." That was a plain direction to the jury to look to particular declarations of the testator as tending to rebut the contention of the contestants that the will, as written, was the result of undue influence; and, as such, it was unsound and in conflict with direction previously given. As heretofore seen, the jury had been told, in a previous part of the charge, that "subsequent declarations" could not be considered "to establish the exercise of undue influence;" and here the instruction is that "any declaration of the testator in regard to the plaintiff, Mrs. Kirkpatrick, as to whether she was his child and as to the circumstances of her birth," may be considered "to rebut the contention" that undue influence was exercised.

This conflict between the two different parts of the charge is irreconcilable, and could not have been otherwise than prejudicial to contestants, in that the effect was to exclude from the consideration of the

jury all declarations, so far as they tended to show, as an independent fact, that undue influence was exercised upon the testator, and, at the same time, to direct a consideration of particular declarations as tending to show that undue influence was not exercised in the production of the will. In other words, none of the testator's subsequent declarations were allowed to be considered in support of the affirmative of the issue of undue influence, but particular declarations, whenever made, were permitted to be considered to establish the negative of that issue. In the latter ruling the trial Judge erred.

The testator's declarations are held to be admissible upon the single issue of undue influence in some of the States, notably in Alabama, where it has been ruled, in accord with the objectionable direction in this case, that declarations adverse to persons excluded are competent to rebut the charge of undue influence (*Roberts* v. *Trawick*, 17 Ala., 55; S. C., 52 Am. Dec., 165), and where it has also been ruled, in conflict with the approved direction in this case, that declarations favorable to excluded persons are admissible to sustain the charge of undue influence. *Gilbert* v. *Gilbert*, 22 Ala., 529 (S. C., 58 Am. Dec., 269).

So far as we are aware, all the Courts that admit the declarations to sustain the will upon an issue of undue influence, also admit them to impeach it upon the same issue; and, likewise, the

Kirkpatrick *v.* Jenkins.

Courts that reject them for the one purpose reject them also for the other purpose. No other ruling would be consistent and fair to both contestant and contestee.

Reverse and remand.