# TENNESSEE CENTRAL RAILWAY COMPANY v. DEWEY VANCE.

Middle Section. June 28, 1926.

No petition for Certiorari was filed.

1. **Courts. Jurisdiction. Bond for costs is not essential to the jurisdiction of a justice of the peace or circuit court.**

In an action against a railway company where a motion was made in the appellate court to dismiss the action because no bond for costs was filed, held a prosecution bond was not essential to the jurisdiction of the justice of the peace or the circuit court and a fortiori is not essential to the jurisdiction of the appellate court.

2. **Costs. Statute providing that persons may give security for costs at any stage of the cause means at any time before judgment.**

Section 4927 providing that any person required to give security for costs may at any stage of the cause give such security held the phrase "at any stage of the cause" as used in the statute means at any time before judgment in the trial court and does not give the appellate court authority to require a party to file a cost bond in the appellate court.

3. **Evidence. Speculative evidence not admissible to prove damages.**

In an action to recover damages for delay in a shipment of hogs where the only evidence to prove shrinkage was that the hogs shipped were a part of a larger drove and that the hogs that were not shipped had gained a pound a day and therefore it was estimated that these hogs had gained a pound a day, held too remote and speculative and not admissible for the purpose of proving the shrinkage.

4. **Appeal and error. In non-jury cases a general finding by the trial court has same weight as verdict of a jury.**

In non-jury cases a general finding by the trial court in favor of one of the parties has the same weight and effect as the verdict of a jury rendered upon a proper charge, and will not be disturbed if it is supported by any material evidence.

5. **Appeal and error. Appellate court will try the case de novo if trial court has admitted incompetent evidence in a non-jury case.**

The rule that the appellate court will not disturb the finding of the trial court will not be applied if the trial court (in a non-jury case) has admitted incompetent evidence to the prejudice of the unsuccessful party, and over his objection; but the appellate court will try the case de novo.

6. **Courts. Practice. Appellate court will not remand, but will render judgment in a non-jury case.**

In cases tried without a jury, the appellate court, upon reversal will not ordinarily remand the case, but will pronounce the judgment which the trial court should have rendered.

7. **Damages. The measure of damages for delay in shipment of live stock is the amount proved actually spent and lost.**

In an action for damages caused by delay in a shipment of hogs where the evidence showed no decline in price and there was no evidence to show a shrinkage on the hogs, held the only damages allowable under the evidence was the money expended for feed bill.

Appeal in Error from Circuit Court, Overton County; Hon. J. R. Mitchell, Judge.

Modified and affirmed.

C. J. Cullom, of Livingston, for plaintiff in error.

E. D. White, of Livingston, for defendant in error.

FAW, P. J.  This suit was begun before a justice of the peace of Overton county by Dewey Vance against the Tennessee Central Railway Company, and from a judgment in favor of Vance the Railway Company appealed to the circuit court of Overton county, where the case was tried before the circuit judge, without a jury, and judgment was rendered in favor of Vance and against the Railway Company for $61.25 and "all the costs of the case except the plaintiff's witnesses."

A motion for a new trial on behalf of the Railway Company was overruled, and the Railway Company thereupon prayed an appeal (in error) to this court, which was granted by the trial court and perfected by the Railway Company.

Although the Railway Company is plaintiff in error, we will, for convenience, refer to Dewey Vance as plaintiff and to the Railway Company as defendant.

A preliminary question is raised by a motion on behalf of defendant Railway Company "to dismiss defendant in error's cause of action for want of prosecution bond." It appears that no prosecution bond, that is, no bond for costs, was executed by plaintiff when the suit was instituted, and none was ever filed or tendered in either of the lower courts. We are of the opinion that a prosecution bond was not essential to the jurisdiction of the Justice of the Peace or the circuit court, and a fortiori is not essential to the jurisdiction of this court.

It is provided by section 4927, Shannon's Code, that "any person required by law to give security for costs may, at any stage of the cause, be ruled to give such security, if it has not previously been done, or to justify or give new security on sufficient cause shown."

The statute just quoted does not afford authority for this court to sustain defendant's motion to dismiss plaintiff's suit, or to make a rule on plaintiff to file a cost bond in the cause. The phrase "at any stage of the cause," as used in the statute, means at any time before the judgment in the trial court. Stewart v. Wilcox, 1 Lea, 81; Scoggins v. Cowden, 1 Lea, 135; Allen v. Harris, 4 Lea, 192; State, for use, etc. v. Gannaway, 16 Lea, 129.

However, the plaintiff, although resisting the motion to dismiss his suit and denying the power of this court to require him to file a prosecution bond, has voluntarily tendered a bond for costs, in

the penalty of $250, with J. S. Fleming as surety, and has thereby
waived the lack of power in this court to require such bond. The
bond thus tendered will therefore be filed as a part of the rec-
ord in the cause.    The defendant's motion to dismiss plaintiff's
suit will be denied and overruled.

The cause of action stated in the warrant is "a plea of debt for
damages in or for failure to deliver for plaintiff a car-load of hogs
to Nashville, Tenn., as it had agreed and contracted to do and de-
liver, under $100."

Plaintiff delivered ninety-five hogs, loaded in a railroad stock
car, to defendant at Algood, a station on defendant's road, in the
morning of Friday, May 8, 1925, for shipment to Nashville, a dis-
tance of about 90 miles.    According to defendant's usual schedule,
the car of hogs should have been "picked up" by one of defendant's
freight trains on Friday afternoon and delivered at the stock yards
in Nashville on Saturday morning, in time for the hogs to be sold
on the Saturday market.

Defendant's station agent, whose duty it was to see that the car
was moved from Algood, failed, through oversight, to give the nec-
essary instructions or notice to the crew of defendant's freight
train on Friday afternoon, and, as a result of this neglect on the
part of defendant's station agent, the car of hogs did not leave Al-
good until Saturday afternoon.

The hogs were delivered at the stock yards in Nashville on Sun-
day, May 10th, and were sold on the market of Monday, May 11th.

It is not denied that the failure of the plaintiff's hogs to reach
Nashville on Saturday morning was due to the neglect of defend-
ant's station agent, but it is insisted for defendant that there is no
evidence that plaintiff was injured by the delay.

It is admitted that plaintiff did not lose the benefit of a favor-
able market by the delay; that is to say, plaintiff's testimony is that
the price at which he sold the hogs on Monday was as good as he
could have obtained on the preceding Saturday.

But plaintiff claims that, by reason of the delay in transportation,
the hogs lost several hundred pounds in weight, and that plaintiff
was onerated with the expense of two extra feed bills.

The trial judge found that plaintiff "sustained a loss of 5 lbs. per
head of the 95 hogs, or 475 lbs. at the price of 11 cts. per pound,
together with a feed bill of $9.50, making a total loss of $61.25"
sustained by plaintiff "account of delayed shipment by the defend-
ant."

It is contended for defendant that there is no evidence in the rec-
ord that there was a shrinkage in the weight of the hogs as the re-
sult of the aforesaid delay in transportation, unless it be found in
certain speculative and conjectural testimony of the plaintiff and

his witnesses Fleming, Windle and Hargrove, which was admitted over the objection of defendant, and the admission of which is made the basis of assignments of error in this court, as well as in the motion for a new trial below.

It appears from the record that plaintiff bought 320 hogs at Chanute and drove them on foot from Chanute to Livingston, a distance of 30 or 35 miles,·and fed them well on corn for six or seven days at Livingston, in a lot where they had plenty of water; that he then selected 95 of the largest of the drove of hogs and loaded them on a railroad car at Livingston and shipped them over the T. K. & N. Railroad to Algood (a distance of 17 or 18 miles), reaching Algood during the same morning on which they were loaded at Livingston, viz: May 8, 1925; that on reaching Algood they were immediately "re-billed" by defendant Tennessee Central Railway Company for shipment over the line of defendant to Nashville, but, for the reason before stated, the car did not leave Algood until Saturday afternoon and did not reach Nashville until Sunday morning. The hogs were unloaded and fed by defendant Railway Company at Algood.

The 95 hogs thus shipped weighed 18,985 pounds at the time plaintiff bought them at Chanute, and weigh 18,460 pounds when delivered at the stock yards at Nashville,—a difference of 435 pounds. They were not weighed after they left Chanute until they reached the stock yards at Nashville. The car was "billed" at 16,000 pounds at Algood, but it is shown without dispute that the weight was fixed in the waybill at 16,000 pounds because that was the minimum weight of a carload of hogs allowed by the railroad tariff schedules.

The testimony of plaintiff and the witnesses by whom he undertook to show that the hogs lost weight between the time of their delivery to defendant at Algood and their arrival at the Nashville stock yards was, in substance, merely an expression of the opinion of the witnesses that the 95 hogs lost weight while they were in the custody of the Railway Company. These witnesses state that the hogs in question were "mast-fed" hogs; that corn-fed hogs will shrink in the course of transportation by rail, but that mast-fed hogs will gain in weight when shipped by rail, if they are corn-fed in transit and receive proper attention otherwise, and that these hogs should have gained one pound per head per day during the six or seven days they were fed at Livingston.

It is apparent that plaintiff formed the opinion stated by him that the hogs lost "between 800 and 1000" pounds while in transit from Algood to Nashville by adding the gain of one pound per day per head (570 pounds for six days or 665 for seven days) to the Chanute weight of 18,895 pounds, and then subtracting from the result the Nashville weight of 18,460 pounds.

Plaintiff was also permitted to prove, over the objection of the defendant, that the 225 Chanute hogs which were not shipped to Nashville, but were fed at Livingston for ten or eleven days, made a gain of 2100 pounds over the Chanute weight, and from this fact plaintiff seeks by comparison to draw the inference that the 95 hogs in question in this case made proportionately a similar gain. The record shows that the 225 hogs' above mentioned were smaller hogs than the 95 hogs shipped to Nashville, but the size of the 225 hogs does not appear.

Plaintiff and his witnesses seem to overlook or ignore the effect of the drive for 30 or 35 miles, from Chanute to Livingston, (in warm weather) upon these hogs, which, according to common experience, will cause a considerable shrinkage in the weight of hogs, particularly large hogs.

It is evident that that part of the testimony of plaintiff and his witnesses which was offered to prove that the delay of twenty-four hours in transportation from Algood to Nashville caused a shrinkage in the weight of the hogs was based upon speculative and conjectural data. Such testimony is too uncertain, indefinite and hypothetical to form the basis of judicial action. Rogers on Expert Testimony (2 Ed.), sec. 13; Jones on Evidence (Civil Cases) (3 Ed.), sec. 376; Cumberland Telephone Company v. Dooley, 110 Tenn., 104, 109, 72 S. W., 457.

The assignments of error directed to the admission of the evidence of plaintiff's witnesses which we have held to be incompetent are sustained and the evidence is excluded.

Through an assignment of error the defendant asserts that there is no evidence to support the finding and judgment of the trial court, and, in another assignment, that the evidence preponderates against the finding of the trial court.

Ordinarily, the latter assignment does not present a question which this court can consider in law cases, even non-jury cases. Kirkpatrick v. Jenkins, 96 Tenn., 85, 87, 33 S. W., 819; Railroad v. Abernathey, 106 Tenn., 722, 728, 64 S. W., 3. This is a logical sequence of the established rule that, in non-jury cases, a general finding by the trial court in favor of one of the parties has the same weight and effect as the verdict of a jury rendered upon a proper charge, and will not be disturbed if it is supported by any material evidence. Eller v. Richardson, 89 Tenn., 575, 580, 15 S. W., 650; Robb v. Cherry, 98 Tenn., 72, 75, 38 S. W., 412; Stephens v. Mason, 99 Tenn., 512, 42 S. W., 143; Weinstein v. Barrasso, 139 Tenn., 593, 595, 202 S. W., 920.

But the rule last stated will not be applied if the trial court (in a non-jury case) has admitted incompetent evidence to the prejudice of the unsuccessful party, and over his objection; but the appellate

court will try the case de novo.   Smith v. Hubbard, 85 Tenn., 306, 309, 2 S. W., 569.

In cases tried without a jury, the appellate court, upon reversal will not ordinarily remand the case, but will pronounce the judgment which the trial court should have rendered.   Boothe v. Allen, 4 Heisk., 258, 260; Singleton v. Wilson, 85 Tenn., 344, 347, 28 S. W., 801; Glasgow v. Turner, 91 Tenn., 163, 167, 18 S. W., 261; Cowan v. Singer Mfg. Co., 92 Tenn., 376, 384, 21 S. W., 663; Brooks v. Paper Co., 94 Tenn., 701, 712, 31 S. W., 160.

It is immaterial whether we apply the one rule or the other in the determination of the instant case.   We find no competent evidence in the record upon which to base a finding that the shipment of hogs lost weight as a result of the delay of twenty-four hours after delivery to the defendant Railway Company.   It does appear that plaintiff paid a feed bill of $9.50 at the stock yards at Nashville which he would not have had to pay if the hogs had reached Nashville on Saturday morning, and to this extent plaintiff was injured as a proximate result of the delay brought about by the negligence of defendant's station agent.

It results that the judgment of the circuit court will be reduced in amount to $9.50, and a judgment will be entered in favor of the plaintiff Dewey Vance and against the defendant Tennessee Central Railway Company for $9.50, with interest thereon from the date of the judgment of the circuit court (March 4, 1926), and for the costs accrued in the trial courts.   The costs of the appeal will be divided; that is to say one-half of same will be adjudged against the plaintiff Dewey Vance and the remaining one-half of the same against the defendant Tennessee Central Railway Company and the surety on its appeal bond.

Crownover and DeWitt, JJ., concur.