MARY LEE SIMS v. BANKS OF COMMERCE & TRUST COMPANY, Trustee, et al.

Western Section.    March 31, 1932.

Petition for Certiorari denied by Supreme Court, July 23, 1932.

Wallace P. Lopez, of Memphis, for appellant.

Hardwig P. Posert and Wilson, Kyser, Armstrong & Allen, all of Memphis, for appellee.

OWEN, J. The complainant's bill was dismissed in the lower court, and she has appealed. Her original bill was filed February 23, 1931, against the bank of Commerce & Trust Company. She sought to rescind and set aside a trust instrument. She alleged that

the instrument was the one that she had executed wherein the bank of Commerce & Trust Company was named as her trustee in a certain trust she had executed on February 11, 1929. By the terms of said trust she had placed with said defendant $15,832.32 in cash and securities. It was therein provided that:

"At the end of twenty years from the date of this instrument, the remaining corpus of this estate shall, if I am still living, be paid over to me, together with any unpaid income therefrom.

"In the event of my death before the expiration of said twenty year period, the income after my death shall be paid to my daughter, Martha Virginia Sims, until the expiration of the twenty year period, when the corpus of the same shall be delivered to her.

. . . . . .

"It is agreed and understood that this trust and agreement shall be irrevocable during the twenty year period, unless both beneficiaries die before the expiration of that period, when this trust shall cease and terminate, and the trust estate shall pass under the laws of descent and distribution to my heirs or distributees or under my will."

There was a demurrer to said bill for a want of proper parties, and the demurrer stated that the bill and the exhibit thereto showed on its face that Martha Virginia Sims was a necessary party to complainant's suit. This demurrer was sustained, and complainant was granted leave to file an amended bill.

On May 25, 1931, complainant filed an amended bill making her infant daughter a party, and the bank of Commerce & Trust Company as trustee, individually party defendants.

The complainant alleged that she was a minor nineteen years of age at the time the trust was executed, that she had a duly authorized and acting regular guardian of her estate in Greenville, Washington County, Mississippi; her guardian being complainant's older sister, Mrs. Bob Lyle.

Complainant, among her allegations, alleged in her bill, the following:

"In order to circumvent the law and terminate the guardianship, your petitioner was persuaded, dominated, controlled and forced into signing said agreement and said petition for the removal of her disabilities of minority at the instance and behest and to gratify the wishes and pleasure of said guardian and that, therefore, her acts in the premises were the acts of said guardian, as your petitioner was a minor at the time and incapable of transacting said business."

It was further alleged:

"That on said day, after being advised and persuaded, coerced and misled into signing said purported trust agreement; that in order for her to sign said agreement, there was filed for and on her behalf, at the instigation, supervision, dominion, domination and control of her said guardian a petition in the probate court of Shelby County, Tennessee, to remove her disabilities of minority; that she joined in said petition, not fully understanding the purport or intent thereof as well as her two older sisters did; and thereupon, a purported decree was entered, purporting to remove her disabilities of minority, in order that she should or could sign said purported trust agreement. That thereupon, on the same day, she signed said purported trust agreement, but did not fully understand the binding covenants, conditions of effect of said agreement, or she would not have consented to or signed same, had she been fully and completely advised as to its nature or character."

The complainant also alleged that the decree of the probate court of Shelby County removing her disabilities was null and void, because the proceedings in said matter were heard by a Circuit Judge, the Honorable A. B. Pittman who sat by interchange for the regular Probate Judge, the Honorable F. M. Guthrie. It was alleged that this interchange was illegal, and it was further alleged that Judge Pittman failed to sign the minutes wherein the decree in removing the complainant's disabilities had been entered. A guardian ad litem was appointed to represent the minor defendant, H. P. Posert, Esquire who made defense for the minor. The Bank of Commerce & Trust Company filed an answer denying the material allegations of the amended bill, and especially plead that the complainant, after she reached her majority, had ratified her trust agreement. Specific acts of affirmation or ratification averred in the answer were as follows:

(A) Assignment by complainant of trust income, dated October 24, 1929, to the South Memphis Land Company.

(B) Assignment by complainant of trust income, dated June 24, 1930, to the same assignee.

(C) Modification by complainant of the assignment aforesaid by a writing dated March 26, 1931. (After she came of age.)

(D) Assignment by complainant of income dated June 8, 1931, to Lester E. Moody. (After maturity.)

(E) Complainant's receipt of income from trust after majority attained, and even after suit was brought.

(F) Other acts of affirmance coupled with knowledge and understanding.

676

The Bank of Commerce & Trust Company, in its answer, also called for a jury. When the case came on for hearing, four issues were submitted to the jury, and their answers given as follows:—

"No. 1. Did Mary Lee Sims fully understand the contends and effect of the purported trust agreement, signed February 11, 1929? Answer: Yes.

"No. 2. Was Mary Lee Sims acting under the advice, domination, coercion and control of her guardian in signing the petition to remove her disabilities of minority or the purported trust agreement? Answer: No.

"No. 3. Was Mary Lee Sims unduly influenced to sign the petition for removal of disabilities of minority or the purported trust agreement? Answer: No.

"No. 4. Has Mary Lee Sims ratified the trust instrument since October 1, 1930, the day she became 21 years of age? Answer: Yes.

At the conclusion of all the evidence before the jury, there was a motion for a directed verdict by the complainant, and a motion for a directed verdict by the defendants, both motions were overruled. After the jury returned the verdict in answer to the issues above stated, the complainant entered a motion for a decree notwithstanding the verdict of the jury, this was overruled. Thereupon, the complainant filed a motion for a new trial containing many grounds, this motion was overruled. The complainant excepted, prayed and perfected an appeal, and had signed a proper bill of exceptions. The complainant has filed thirty-four assignments of error. The guardian ad litem has filed the record for error. The guardian ad litem asked for a fee to be paid out of the general estate, his motion was denied. Attorneys for the defendant Bank of Commerce & Trust Company were allowed a fee of $500 for their services in the Chancery Court, to be paid out of the general fund held by the trustee.

The first two of complainant's assignments insist that the proceedings in the Probate Court of Shelby County, were void, wherein complainant's disabilities were sought to be removed.

Assignments from 3 to 21 complain of the court's failure to sustain complainant's objections to certain testimony given before the jury. These assignments will be treated under group No. 2, and are as follows:

Assignments from 3 to 10 complain of the testimony given by complainant on cross-examination.

The eleventh assignment complains of the testimony of Mrs. Lyle, complainant's sister.

Assignments 12 and 13 go to the testimony of attorney Thomas of the Greenville, Mississippi bar, and who represented complainant

in her settlement made by the Chancery Court of Washington County, Mississippi, with complainant's sister, Mrs. Lyle.

Assignments 14, 15 and 16 are based on objections to the testimony of attorney John Exby of the Memphis bar, who represented Mrs. Lyle, the guardian, in her settlement with complainant in said court in Mississippi.

Assignment 17 goes to the testimony of Judge Guthrie, Judge of the Probate Court of Shelby County.

Assignments 18, 19 and 20 complain of the testimony of witness, Ross, assistant trust officer, of the defendant Bank of Commerce & Trust Company, and with whom complainant had had various dealings and conversations.

Assignment 21 complains of the testimony of witness Moody, a relative of the complainant and to whom complainant assigned a certain portion of her income, June 8, 1931.

Assignment 22 complains of the court's refusal to sustain complainant's motion for a directed verdict.

Assignments 23 to 26 inclusive complain of certain excerpts from the court's charge.

Assignments 27 and 28 complain of the court refusing two special requests offered by complainant to the court's charge.

The remainder of the assignments complain of the decree against the complainant.

Briefly stated, the complainant. reached her majority October 1, 1930. Her father died when she was less than two years of age. Her mother died when she was eleven years of age. It appears that there were several children, and Mr. Lee, the father of complainant, who died in the State of Mississippi, left each of his children about $25,000. Complainant's mother was her first legal guardian. Upon the death of her mother, Howard Dyer, Clerk of the Chancery Court of Washington County, Mississippi, became complainant's guardian, also the guardian of other minors, brothers and sisters of the complainant. It appears that Dyer was negligent to his trust. He was removed, and in April, 1927, Mrs. Bob Lyle, a sister of the complainant and who was nine years her senior, became guardian. Mrs. Lyle, also, became guardian for another sister older than the complainant, a Mrs. Maynard.

It appears that the complainant married Frank Sims when she was about seventeen years of age. When she reached eighteen years of age, Sims, the husband of the complainant, employed Mr. S. B. Thomas of the Greenville, Mississippi bar to make a demand on complainant's guardian for a settlement. The statutes of Mississippi permitted a married woman over eighteen years of age to terminate her guardianship. It appears that about the same time that complainant's

guardianship was terminated, that she and her husband, both, appeared in the Chancery Court of Washington County, Mississippi, and testified that they wanted to have the defendant Bank of Commerce & Trust Company to act as trustee for the complainant. They both testified that they wanted the trust to exist for fifteen years. They were represented, the complainant and her husband, by counsel. It appears that complainant's husband was unskilled in business affairs. He was somewhat of a reckless and irresponsible nature. It further appears that two of complainant's sisters and one brother had lost their inheritance soon after they had received their funds from the guardian. A trust was also created for complainant's sister, a Mrs. Maynard, and this same defendant is Mrs. Maynard's trustee.

Mrs. Maynard was the only witness for complainant. She testified that she, the witness, was well satisfied with her trust agreement.

It further appears that both the complainant and her sister, Mrs. Maynard, had lived prior to complainant's marriage, with Mrs. Lyle in Memphis, and that each had drawn about $100 per month from their guardian. Mrs. Maynard testified that they were all affectionate sisters, and that Mrs. Lyle had the complainant's interest at heart. The complainant appeared to understand the trust agreement perfectly, except she said that she didn't know what was meant by the word "irrevocable." Her attorney, Mr. Thomas, testified that he knew that no trust company would accept a trust that could be revoked the next day after it was created.

It appears from the evidence that the complainant and her husband received $3000 in cash in February, 1929, and in June, 1930, she tried to borrow more than her income from the defendant Bank of Commerce & Trust Company, and when the defendant refused her application for a loan, the complainant became dissatisfied with the trust she had created.

It appears that the complainant's husband was present during the trial, but he did not testify. We find that the complainant understood the conditions and effect of the trust agreement she signed with the defendant Bank of Commerce & Trust Company February 11, 1929.

Attorney Thomas testified that the complainant wanted to save her estate, put it in the hands of a responsible party, and protect her child which was then a little more than a year old. There seems to be no explanation of why the first idea of having the trust agreement changed from fifteen to twenty years, but we infer that the trust would have lapsed in fifteen years, prior to the infant daughter reaching her majority. And the time of twenty years was fixed so as to place the termination of the trust beyond the infant Martha Virginia's minority.

We find that Mrs. Lyle did not coerce or control the complainant in seeking the removal of her disabilities, or in creating the trust agreement. Mrs. Lyle acted as an affectionate sister, and what she did she believed she had grounds, for in so acting was for complainant's best interests. We find as a fact that the complainant has ratified said trust agreement after she reached the age of twenty-one years, and that she fully knew what she was doing.

It appears that she and her husband purchased some real estate from the South Memphis Land Company. She gave certain assignments to the said Land Company of her income in the hands of the defendant Bank of Commerce & Trust Company; two of these assignments, she gave before she reached a majority, that she ratified both of these assignments after she reached her majority. We find that since reaching her majority she has directed the following payments to be made by the defendant trustee out of her funds, to the following parties as assignees in the assignments she had executed:—

| Date | Assignee | Amount |
|---|---|---|
| Nov. 22, 1930 | South Memphis Land Company | $ 51.18 |
| Jan. 2, 1931 | South Memphis Land Company | 154.40 |
| Jan. 2, 1931 | South Memphis Land Company | 15.57 |
| Mar. 23, 1931 | South Memphis Land Company | 52.20 |
| Aug. 10, 1931 | Lester E. Moody & Company | 25.00 |
| Sept. 23, 1931 | Lester E. Moody & Company | 25.35 |
| | | $323.70 |

Since passing her twenty-first birthday, she has appropriated the fruits and profits of the trust by accepting from her trustee and receipting it for the following income payments made by check:—

| Date | Amount |
|---|---|
| October 22, 1930 | $ 39.25 |
| November 2, 1930 | 50.00 |
| January 21, 1931 | 150.00 |
| January 20, 1931 | 57.13 |
| March 26, 1931 | 20.17 |
| May 20, 1931 | 38.67 |
| May 21, 1931 | 60.00 |
| July 2, 1931 | 120.00 |
| September 24, 1931 | 48.42 |
| | $583.64 |

Issues of fact in Chancery, made upon demand of either party, are tried by the jury, according to the forms of a court of law, and such trials are conducted as are jury trials at law and the finding of the

jury has the same force and effect as in a trial at law. Sec. 4888, Shannon's Code, Sec. 6286, Shannon's Code.

## II.

If there is any material evidence to sustain the verdict of the jury, its verdict is conclusive. Meyer v. Cooper, 6 Tenn. App., 38; Scruggs v. Heiskell, 95 Tenn., 456, 32 S. W., 386; McElya v. Hill, 105 Tenn., 319, 59 S. W. 1025.

## III.

This court looks to the sole question of whether or not there is any material evidence to sustain the verdict of the jury and, in determining whether or not there is such evidence, the strongest legitimate view of the testimony against the losing party is, by this court, taken as true. Meyer v. Cooper, 6 Tenn. App., 38; R. R. v. House, 96 Tenn., 552, 35 S. W., 561; Citizens Rapid Transit Co. v. Segrist, 96 Tenn., 120, 33 S. W., 920; Kirkpatrick v. Jenkins, 96 Tenn., 85, 33 S. W., 819.

## IV.

All other than determinative issues are immaterial and this court looks only to the verdict of the jury on the material issue. Wright v. Jackson Const. Co., 138 Tenn., 145, 196 S. W., 488.

## V.

A minor's contract, generally speaking, is voidable.

The minor can repudiate such contract or elect to claim its advantages. Such election or confirmation may be by express ratification, by acts which reasonably imply an affirmance, or by the omission to disaffirm within a reasonable time. Scott v. Johnson, 5 Heisk., 633; Scott v. Buchanan, 11 Humph., 743; Western Union v. Ausbrook, 148 Tenn., 622, 257 S. W., 858.

Just prior to the settlement made by complainant's guardian, the complainant telephoned her guardian, Mrs. Lyle, and sister of complainant, and insisted that complainant's needs were so urgent that she had to have $600, and that the complainant's husband was demanding and threatening to leave complainant and take their baby unless complainant received $600. Thereupon, Mrs. Lyle, the guardian, decided that she would make a settlement with the complainant. Mrs. Lyle testified that as she had had misfortune and lost her inheritance, and it appears that other brothers and sisters had had misfortune and lost heavily their estates that their father had left them. Mrs. Lyle advised complainant, Mary Lee Sims and Mrs. Lyle's other sister for whom she was guardian, Martha Maynard to have their funds turned over to a trustee and placed in trust; both sisters readily consented, and it appears that after complainant's husband received $3000 or upon condition that he receive $3000, a

part of which was to pay for a Chrysler automobile, the husband of the complainant readily and willingly agreed to complainant's remaining funds being placed with a trustee. The record shows that the complainant's husband is reckless, careless and harum scarum, and was extravagant in spending complainant's money. Since this trust was created, the trustee, through its trust officer, Mr. Ross, advanced funds to the complainant for the purpose of settling or taking up some worthless checks complainant's husband had issued, and for which he had been arrested and was in the Shelby County jail. Mr. Ross, the trust officer, went with complainant to the jail and had her husband released.

The record shows that the defendant Bank of Commerce & Trust Company is handling between 400 and 500 trust estates. It is a trust company of splendid reputation, and it was admitted by complainant's counsel at the trial that the defendant was abundantly solvent.

We will dispose of the assignments which form group number two, and are relative to exceptions or objections of the testimony given by various witnesses. None of this evidence complained of was prejudicial to complainant's case. Many of the objections were general. Counsel for the complainant during the examination of the witnesses would say "I object," then again "Now I object."

As to Mrs. Lyle's testimony, it is insisted by complainant that her evidence was incompetent because she was relating matters that transpired between the witness as guardian and the complainant as her ward. Complainant relies upon Section 5598 of Shannon's Code, which is as follows:

In actions or proceedings by or against executors, administrators or guardians, in which judgments may be rendered for or against them, neither party shall be allowed to testify against the other as to any transaction with or statement by the testator intestate, or ward, unless called to testify by the opposing party.

This section of the Code is not applicable in the instant case. This was not a proceeding by or against Mrs. Lyle as guardian. It is insisted that the testimony of the witnesses Thomas, Exby and Ross were all attorneys, and had been the attorneys for the complainant, and that what they knew was privileged. These lawyers did not relate any privileged communications. Mr. Ross was never complainant's attorney. What the witnesses Thomas and Exby related occurred when other parties were present beside complainant and her attorney. And the witness Wynn, an attorney, of the Greenville bar, testified as Thomas and Exby, and no complaint is made as to his testimony. Wynn was the attorney for Mrs. Lyle, the guardian. Many of these assignments as to incompetent testimony are too general. The testimony complained of in some instances was

not set out in the motion for a new trial, and in some instances we are cited to certain pages of the record for the objectionable testimony, but such pages will only show a general objection.

We are of the opinion that as to all the evidence complained of, none was prejudicial to complainant's case, and the jury was not prejudiced thereby. The determinative question in this law suit as we view the record is whether or not the complainant had ratified her trust agreement with the defendant, and the ratification was made after complainant reached her majority. We find material evidence to sustain the jury's answer as to ratification, the jury having found that the complainant had ratified her trust agreement with the defendant.

Counsel for the complainant cites the case of Buckeye Oil Company against Willie Abrahams, recently decided by this court, wherein the minor was not bound by an agreement, he could avoid his contract. The Abrahams' case is not applicable to the facts of this case. There was no question of ratification in the Abrahams' case. Counsel for complainant, in our opinion, is confused between a void and a voidable contract. He insists that the agreement executed by the complainant to the defendant was void from the beginning and could not be ratified.

In Western Union Telegraph Co. v. Ausbrooks, supra, our Supreme Court said:

"A minor's contracts, generally speaking, are voidable. The minor can repudiate such contracts or can elect to claim their advantage. The party contracting with a minor, however, is bound by such voidable contracts, if the minor elects to enforce them. Smith v. Evans, 5 Hump., 70, 78; Wheaton v. East, 5 Yerg., 41, 60, 26 Am. Dec., 251.

"The rule seems to be universal that all deeds or instruments executed by an infant are voidable, only with the single exception of those that delegate a naked authority, which are void: 11 Hum., 472."

Even a contract obtained by fraud, coercion and undue influence is voidable, not void. Swan v. Castleman (1874), 63 Tenn., 267, 266.

Such contracts of an infant being merely voidable, may be ratified or disaffirmed at majority. Scott v. Johnson (1871), 52 Tenn., 614, 633.

In Johnson v. Steger, 7 Higgins, 317, the Court of Civil Appeals, speaking in an opinion by Mr. Justice Moore, held that a minor had ratified a contract wherein during her infancy she had purchased a piano on the installment plan. After her majority she made a $3 payment, and later sought to disaffirm the contract. The court held

that she had ratified the contract after reaching her majority by the payment of the $3.

In one of the early cases of our Supreme Court, Wheaton v. East, 5 Yerg., 41, our Supreme Court said in speaking of a minor's ratification of an agreement:

"Anything, therefore, from which his assent, after he arrives at age, may be fairly inferred, will be sufficient to affirm the deed made during infancy and prevent him from afterwards electing to disaffirm it."

Corpus Juris states the rule as follows.:

"In order to confirm an executed contract of an infant, all that appears to be necessary is to show any distinct acknowledgment or act indicating an intention to be bound by the contract; and if the infant continues, after becoming of full age, to occupy a position which is only explicable upon the supposition that he intends to stand by his contract, it will be considered as a ratification."

We are of the opinion that the complainant has ratified her agreement with her trustee after she reached her majority, and that there is evidence to sustain the jury's verdict in so finding.

We are of the opinion that the assignment as to the proceedings in the Probate Court and the assignment as to the evidence of Judge Guthrie, Judge of the Probate Court, as to whether he was sick the day Judge Pittman sat for him by interchange, or was out of the city becomes immaterial, and these assignments are overruled.

The witness Moody's testimony was competent to show that complainant was doing an act that ratified her trust agreement with the defendant. And assignment 22 is overruled, because complainant was not entitled to a directed verdict in her favor, and this is also applicable to assignment No. 27.

The first special request, offered by complainant's counsel and refused, was in substance a request for a directed verdict. As to the assignments complained of, certain excerpts of the court, which these cannot be considered because they were not called to the attention of the Trial Judge in the motion for a new trial. Wise v. Morgan, 101 Tenn., 273, 48 S. W., 971; Rotherson v. Burton, 2 Tenn. App., 164.

As to the second special request, it was properly refused. This request wanted the jury to disregard the assignment made to Moody, because complainant insisted that it was on Sunday. Moody denied that the assignment was made on Sunday. The assignment was dated June 8, 1931, and this appears to have been on Monday. The assignments as to special requests being refused are overruled. Assignments 29 and 30 are overruled because they are too general.

It is assigned as error that the court erred in overruling complainant's motion for a new trial.

(2) That the court erred in not rendering a judgment for the complainant notwithstanding the verdict of the jury. Both of these assignments are too general. Stone v. Stonecipher (1928), 7 Tenn. App., 614-617; Markland v. Hospital (1927), 5 Tenn. App., 519-521.

Assignment 31 complains of the court permitting the defendant Bank of Commerce & Trust Company to amend its answer, setting up ratification by the complainant. This was a proper amendment within the sound discretion of the Chancellor. Shannon's Code, Section 6145.

Assignments 32 and 33 complain of the allowance of the various items of expenses incurred by the trustee in the course of litigation. These were proper items of expense. And expenses properly incurred in defending a trust or a will or an estate are properly paid out of the corpus.

It results that all of the complainant's assignments are overruled and disallowed. And the judgment of the court dismissing her bill is affirmed.

The Chancellor, in disposing of the application for a fee for services rendered by the guardian ad litem, decreed as follows:

"Upon proper application of H. P. Posert, Guardian ad litem, for an allowance for services as such Guardian, it is ordered; adjudged and decreed that a lien for services of H. P. Posert, Guardian Ad Litem, of the minor defendant, Martha Virginia Sims, for defending and preserving her interest from attack, is hereby declared and fixed upon the contingent interest of the said minor in the trust estate, the amount to be determined and paid to her should said estate vest in her.

Upon motion of the said Guardian to have the exact amount of such compensation settled at this time the court overruled the same upon the ground that the amount ultimately realized by the ward would be a factor in determining the same, to which the Guardian ad litem excepted."

The Guardian Ad Litem has assigned the following errors:

I.

The Chancellor erred in failing and refusing to require the Trustee to pay now out of the corpus the fee for services of the Guardian Ad Litem of the minor defendant, Martha Virginia Sims.

II.

The Chancellor erred in deferring the payment of the said Guardian Ad Litem's fee to the possible vesting of the infant's interest.

## III.

The Chancellor erred in failing and refusing to hold that said Guardian Ad Litem's fee was a proper item of expense in the administration of the trust estate, and as such payable by the Trustee at this time out of the corpus thereof.

The Guardian ad Litem relies upon the case of the American National Bank v. Meadors, 162 Tenn., 324, 30 S. W. (2d), 250.

In the case of Bank v. Meadors, supra, there was a bill filed to have a will construed; two Guardian ad Litems were appointed, one to represent minors who were kin to the testator, and a guardian ad Litem to represent the minors who were kin to testator's widow. The Chancellor construed the will. The minor defendants had no interest in the estate. Each guardian ad litem was allowed a fee. Upon the appeal the Supreme Court held as follows:

"In the case before us, the administration of the testator's estate was embarrassed and halted by a patent ambiguity in the language of the will. The executor was unwilling to act without the aid of a court of equity, and filed a bill for the purpose of construction. The minor defendants were, so far as is shown by the record, making no claims to any part of the estate, and the executor's uncertainty did not arise from any action taken or position assumed by them. It was necessary to the administration that they be made parties to the suit and that they be represented by the guardian ad litem as counsel. The executor was interested only in executing the directions of the will, as they might be interpreted in this litigation, after a full and adequate consideration of the several theories made possible by the ambiguity in the will. The services of the guardians ad litem contributed to the progress of the suit, presenting to the court one of the two possible interpretations between which the executor was unable to choose for itself. In these circumstances, we think the chancellor was vested with a discretion to conclude, as in Smith v. Haire, that the two guardians ad litem had rendered their services in aid of the proper administration of the estate, and that their compensation would be a proper charge against the estate as an expense of its administration, to be taxed as a part of the costs of the suit.

"The allowance of such fees as an item of expense in the administration of estates, by courts of equity jurisdiction, is generally sustained by authorities elsewhere. Page on Wills, section 1411; Singer v. Taylor, 91 Kan., 190, 137 Pac., 931, 37 Ann. Cas., 713, and note; Woman's Union Missionary Society v. Mead, 131 Ill., 338, 32 N. E. 603."

686

In the case of Smith v. Haire, cited 138 Tenn., 255, 197 S. W., 678, referred to in the Meadors case, supra, it was a case involving a fraudulent will, and counsel for the contestants applied for a fee out of the estate. The Supreme Court held as follows:

"Compensation for the services so rendered by counsel for the contestants was adjudged against the estate as 'expenses incurred in the administration of the estate,' on the theory, and for the reason, that their services inured to the benefit of the estate. The court then said: 'Expenses of this kind are not debts of the decedent. They are expenses incurred in the administration of the estate.' This is true both as to compensation of executors, administrators and their attorneys, and other persons who render services for the benefit of the estate."

Counsel for complainant in resisting the guardian ad litem's defense on Writ of Error relies on House v. Whitis, 5 Baxt., 691, and Patton v. Dixon, 105 Tenn., 105, 58 S. W., 299. In both of these cases relied on by the complainant, minors were necessary party defendants. In each case the complainant was successful, and in each case the minor had no property or funds out of which to pay a guardian ad litem's compensation. The court did not see proper to burden a successful litigant with a fee due from the minor defendants to the guardian ad litem, in denying the application for a fee.

In Patton v. Dixon, 105 Tenn., 97, 58 S. W., 299, the Supreme Court said:

"This is decisive of this application, and while the minor in this case was a necessary party and the defense rested alone upon the guardian ad litem, and was very ably made and with much care and learning, we see no ground upon which we can tax a fee for him against the complainant, and he can only rely upon the approval of his conscience here and his reward hereafter when the final judgment is passed for his compensation."

There is a distinction between the two cases relied on by counsel for complainant and the instant case. In the present case, it was necessary to have the services of a guardian ad litem in the preservation of a trust, and services in representing the minor was indispensable to the proper conduct of the case. The trust has been upheld, and we are of the opinion that the guardian ad litem is entitled to have his reasonable compensation paid out of the corpus of the trust funds as much so as the attorneys who represented the trustee.

It results that the Writ of Error is sustained, and the decree of the lower court is modified. This court is of the opinion that H. P. Posert, Esquire, is entitled to a reasonable fee for his services, and

the record shows that he has rendered valuable service in the performance of his duty to his client, the minor defendant, and the minor defendant has been benefited by the preservation of the trust. This court is pleased to fix the sum of $150, which is adjudged as a reasonable compensation to H. P. Posert, Esquire, for his services rendered in behalf of the minor defendant, Martha Virginia Sims, to the present time, said sum will be paid by the defendant, Bank of Commerce & Trust Company, Trustee, out of the corpus of the trust belonging to the complainant and minor defendant. Said Trustee will be given credit for the sum herein fixed as a reasonable fee for H. P. Posert in its settlement of said trust estate.

The defendant, Bank of Commerce & Trust Company, Trustee, has presented a petition asking that this court authorize it to pay certain expenses it has incurred in resisting the appeal of the complainant in this court, and said defendant asked this court to fix a reasonable fee for its counsel for making a defense to complainant's appeal in this court, and this court order a reasonable counsel's fee to be paid to defendant's counsel from the corpus of the trust fund in its hands and that it also be allowed to pay $11, $10 of which is expenses of the defendant's attorney incurred in attending court and making the oral argument before the court on March 1, 1932, and $1 of said expenses for a certified copy of the decree of the Chancery Court in this case. In fixing counsel's fee for defendant, Bank and Trust Company, in the lower court, the court said:

"It is further ordered that the question of fee for services on appeal of this cause, if there be an appeal, be and the same is hereby reserved."

This court is of the opinion that the $11 incurred is a proper charge against the corpus of the complainant's estate and that the attorneys for the defendant, Bank and Trust Company, are entitled to a reasonable fee for their services in this court. This court is pleased to fix said fee for the attorneys for the defendant, Bank and Trust Company, Trustee, for their services in this court at $100. The Trustee will pay the $100 attorney's fee to its attorneys and the $11 incurred as expenses, out of the corpus of the trust belonging to the complainant and minor defendant, and said Trustee will be given credit for the sum of $111 fixed as a reasonable fee and for expenses as herein stated in its settlement of said trust estate.

The complainant and her surety on appeal bond will pay all the costs of the cause, including the appeal and the costs of writ of error, for which execution will issue.

Heiskell and Senter, JJ., concur.