# P. L. BOWERMAN *v.* J. T. BURRIS.*

## (*Knoxville.*   September Term, 1917.)

1. **WILLS.   Contests.   Evidence.**

In view of the opportunity for falsification, and as it opens the doors to fraud, parol testimony as to conversations with testator, either before or after the making of a will, as to his purposes or reason for making a disposition, or failing to make a disposition of property, is not admissible to attack the instrument.   (*Post, pp.* 222, 223.)

3. **WILLS.   Attacks.   Pretermitting children.**

As there is no rule requiring equality among children, and Thompson's Shannon's Code, sections 3925, 3926, provide for relief only in case of pretermission of unborn children, a will is not open to attack on the ground that testator executed it, mistakenly believing that his only son was dead, where such mistake did not appear from the will itself and could only be established by parol testimony.   (*Post, pp.* 223-226.)

Cases cited and approved: Burns v. Allen, 93 Tenn., 149; Reeves v. Hager, 101 Tenn., 714; Wilson v. Fosket, 6 Metc. (Mass.), 400; Gifford v. Dyer, 2 R. I., 99; Campbell v. French, 3 Ves. Jun., 321; Eatherly v. Eatherly, 41 Tenn., 462; Comstock v. Hadlyme Society, 8 Conn., 254.

Code cited and construed: Secs. 3925, 3926 (T.—S.).

---

## FROM McMINN.

---

Appeal from the Circuit Court of McMinn County to the Court of Civil Appeals, and by *certiorari* to the

*Authorities discussing the question of right of pretermitted heirs to contest probate of will, see note in 37 L. R. A. (N. S.), 1143.

Court of Civil Appeals from the Supreme Court.—
S. C. Brown, Judge.

N. Q. Allen and L. H. Lasater, for plaintiff.

Jones & Davis, for defendant.

Mr. Chief Justice Neil delivered the opinion of the
Court.

This was a proceeding conducted in the circuit court
of McMinn County for the contest of the will of one
David Bowerman. The declaration was in the usual
form; also the first plea. The second and third pleas
present the real matters of controversy. They are in
substance the same, and aver that the will was invalid,
because it was made "under a mistake and misappre-
hension of the facts; the same having been made at a
time when the said David Bowerman believed that the
defendant P. L. Bowerman, the only son of the said
David Bowerman, was dead, and this mistake and
misapprehension was such as renders the said paper
writing void and of no effect as to this defendant."
On motion of the executor the trial judge struck out
both pleas. On the trial, however, the defendant
offered evidence which tended to show that the tes-
tator, some years before his death, had used language
indicating that he believed that the contestant, P. L.
Bowerman, was dead. It appears from the evidence
that the latter had left home many years prior to his
father's death, and did not return until some years

thereafter. The contest was instituted seventeen years after the probate of the will in common form in the county court. The trial judge, on motion of the executor, ruled out this evidence as irrelevant. There was then a verdict of the jury in favor of the will, and a judgment thereon, in the usual form. From this judgment an appeal was prayed and prosecuted to the court of civil appeals, and there the judgment of the trial court was affirmed. The case was then brought to this court by the contestant on the writ of *certiorari*.

Did the court of civil appeals commit error in affirming the judgment of the trial court? We are of the opinion that it did not. The question may be tested by determining whether the evidence offered was competent. We think that it was not competent. It is contrary to sound policy to admit evidence of conversations with the testator, occurring either before or after the making of the will, as to his purposes or his reasons for making a disposition, or failing to make a disposition. Such evidence would open wide the door of fraud. The fact that the testator is dead, and therefore cannot give his version of the matter, must operate strongly on the minds of the court. When to this is added the great temptation to falsify, springing out of the prizes which success offers, the ease with which such falsification may be accomplished through the subornation of conscienceless witnesses and the practical impossibility of detecting the fraud, the aversion of the court to such evidence becomes more pro-

nounced. The sanctity of wills must be guarded against all sinister approaches, from whatever sources they emanate. We are not passing judgment on the motives behind the offer of the present evidence, nor are we impeaching the integrity of the witnesses in the case before us. Our view is based solely on the evil tendency of such evidence in general.

Moreover, if the evidence could be at all effective, under our system, two points would have to be established: Firstly, that the testator was laboring under a mistake as to the fact; and, secondly, that if the truth had been known he would have made a different disposition, and we think these facts should appear in the will itself. The danger arising from evidence *dehors* the will we have just stated. There is nothing in the will on the subject. It may be suggested that natural affection would prompt an equal division of a testator's property among his children, but the operation of this motive is so deflected by the conduct of children themselves, as well as by demands made upon the parent in his lifetime by some children as compared with others, that it is not at all a reliable criterion. Besides this, there is no rule in this State requiring equality among the children. The testator can dispose of his property as he wishes. He may give it all to one child, or divide it among them in such varying proportions as his judgment and affection may dictate. He may even pretermit one or more of his children, not even mentioning them in the will, and they cannot complain, or

find therein any ground for attack on the will. The only instance in which the pretermission of a child is held as ground of relief is in the case of an unborn child, and that depends upon the express terms of our statute, granting to such pretermitted child the same interest in the estate of his father as it would have taken in case of intestacy; the legatees and devisees being required to contribute proportionately to effect this result. Thompson's-Shannon's Code, sections 3925, 3926; *Burns* v. *Allen,* 93 Tenn., 149, 23 S. W., 111. A very strong case showing that a will merely omitting the name of a child is a disheritance is *Reeves* v. *Hager,* 101 Tenn., 714, 50 S. W., 760. In that case it appeared that the wife made a will devising all of her property to her husband, making no mention of her children. The will was executed April 1, 1878, and she died in November, 1879. At the date of the execution of the will she had one living child, aged about four years, and, at her death, left another child aged about three weeks. Under our statutes a will speaks as of the date of the testator's death; so in this case it appears that the mother, by failing to mention her two children, disinherited them in favor of their father. It was held to be a good will on its face, and protected an innocent purchaser of the land, although it was subsequently set aside on a contest based on the ground that it was procured by fraud and undue influence, and that the wife was of unsound mind. The purchaser had bought the land from the husband without any notice of these matters;

so it was held that, the will being good on its face, the deed of the husband protected the purchaser.

Statutes similar to our own protecting unborn children pretermitted in wills, and many statutes protecting children or heirs at law generally against having been unintentionally pretermitted, have been passed in various States. A list of many of these will be found in a note to *Wilson* v. *Fosket,* 6 Metc. (Mass.), 400, 39 Am. Dec., 740, *et seq.* Of course, it has been held under such statutes that parol evidence is admissible to show whether the ommission was intentional or otherwise. In the absence of such statutes, however, it is clear that evidence of the kind would be irrelevant, since the intention of the testator must be gathered from the will itself. Parol evidence is not admitted, except to explain a latent ambiguity, or rebut a resulting trust. In States where there is no statute in favor of pretermitted children it is held, as we have held here, that the mistake must appear on the face of the will. The case of *Gifford* v. *Dyer,* 2 R. I., 99, 57 Am. Dec., 708, was such a case. In that case it was held that the fact that testatrix had been laboring under a mistake as to the supposed death of her son could not be shown *dehors* the will, that the mistake must appear on the face of the will, and that it must also appear what would have been the will of the testator but for the mistake. In that opinion an authority was cited (*Campbell* v. *French,* 3 Ves. Jun., 321) to the effect that, where the testator revokes a legacy upon

the mistaken supposition that the legatee is dead, and this appears on the face of the instrument of revocaton, the revocation should be held vcid. So, such mistake appearing on the face of the will would be ground for a correction of the will by a bill in equity. *Eatherly* v. *Eatherly,* 1 Cold. (41 Tenn.), 462, 78 Am. Dec., 499. But such evidence would, of course, be no ground for setting aside the will *in toto;* and *a fortiori* such evidence appearing *dehors* the will could not be ground for setting aside the will on contest. *Comstock* v. *Hadlyme Society,* 8 Conn., 254, 20 Am. Dec., 100, 107, and authorities cited thereon.

On the grounds stated we are of the opinion that there was no error in the judgment of the court of civil appeals, and it is affirmed.