GEORGE RAY ROLEN, Executor, Appellant, v.
MARJORIE ANN ROLEN et al., Appellees.
—460 S.W.2d 355.

Eastern Section. February 20, 1970.

Certiorari Denied by Supreme Court August 3, 1970.

Flynn & Flynn, Knoxville, and W. Henry Ogle, Sevierville, for appellant.

Andrew J. Evans, Jr., Knoxville, and Ben W. Hooper, II, Newport, for appellees.

McAMIS, P. J. This is a will contest involving the purported will of Hobart Rolen, contested on the grounds of mental incapacity, fraud and undue influence.

The Circuit Judge, sitting without a jury, found for the contestants, resulting in this appeal by George Ray Rolen, Executor and sole beneficiary under the terms of the paper offered for probate.

Hobart Rolen, a resident of Sevier County, was never married. He died at the age of 69 in a Knoxville hospital some 10 days after he was taken there by George Ray Rolen for treatment. He was taken to the hospital in an automobile driven by George Ray Rolen. On the way to the hospital they stopped in Sevierville and parked on the street in front of the law office of an attorney who had previously represented Mr. Rolen.

Because Mr. Rolen was sick and short of breath, George Ray Rolen went upstairs and told the attorney Mr. Rolen wished to consult with him in the car. According to the testimony of George Ray Rolen the deceased on the way to town told him he wanted to discuss some business with the attorney but never mentioned making a will in his

favor or that he intended to execute a will. When the attorney came to the car George Ray Rolen absented himself but returned after the attorney went back to his office to draw the will.

After returning with the will it was read over by the attorney who then went with Mr. Rolen up the street and parked in front of the bank where Mr. Davenport, an official of the bank, came to the car and he and the attorney witnessed the execution of the will by Mr. Rolen who, being totally illiterate, made his mark. Neither the attorney nor Mr. Davenport saw anything to indicate Mr. Rolen was of unsound mind. Mr. Davenport testified Mr. Rolen said nothing after the will was read. Apparently, he had only the briefest conversation with him. After executing the will Mr. Rolen was taken immediately to the hospital.

Mr. Rolen lived alone on a farm. He had suffered for a number of years with a heart condition for which he consulted a local physician three days before going to the hospital. Before leaving home, J. B. Rolen, a witness for contestants, shaved him and assisted him in putting on his clothes. It seems to have been generally recognized that his condition was serious and required hospitalization.

When he reached the hospital he told Dr. Sexton, his treating physician, he had not slept for three days but beyond this the doctor testified he had great difficulty in obtaining a history of his condition. He wanted to go home almost immediately and it was difficult to keep him in bed.

Dr. Sexton testified the patient was suffering from cardiac insufficiency and had been for several days, re-

sulting in an accumulation of fluid in the pleural spaces which, in turn, interfered with the respiratory function and caused rapid breathing or shortness of breath. Although the patient had received oxygen which was calculated to improve his condition before he was examined by the doctor, Dr. Sexton testified he found the patient "obtunded mentally" which he defined by saying "(H)e just wasn't perhaps, thinking as clearly as might have been normal for him."

It was the opinion of Dr. Sexton Mr. Rolen's condition and loss of sleep could have affected his ability to act rationally and his competency to make a will was, in his opinion, doubtful.

In early life, Mr. Rolen lived in a common law relationship with Rose Presnell. During this relationship two daughters who are the contestants, now 18 and 14 years of age, were born. About 13 years before the will was executed Miss Presnell moved with the two daughters to Newport where they have since resided. They returned often to visit Mr. Rolen but had not seen him for about three weeks before he died. He had a normal affection for the two girls and, in 1964, had them legitimated by the County Court. He conveyed to each of them a tract of land, the value of which is not shown, and until shortly before his death and after the conveyance of the land often expressed the desire that his two daughters receive his estate at his death.

Miss Presnell testified the deceased Mr. Rolen during the time she lived with him was subject to periods of mental blackouts and that at times he would not act and talk sensibly, as if he were drunk, but he had not been drinking.

A number of lay witnesses both before and after the testator went to the hospital saw nothing to indicate he was of unsound mind. They variously described him as having trouble breathing and a very sick man. J. B. Rolen, above mentioned, testified that the day before he was taken to the hospital he was "a bad sick man" and worried about his sister's property, evidently referring to a sister who had lived with him and who seems to have been incapable of caring for herself. He had another sister and a brother but was not on good terms with at least one of them because of a law suit over some land. Evidently referring to them the will states, after devising the entire estate to George Ray Rolen, a third cousin:

"I am not providing for my other relatives for reasons best known to me * * *"

There is no proof the deceased had any animosity toward his invalid sister or his daughters.

The will itself strongly suggests the deceased at the time of executing the will had in mind persons he did not want to have any part of his estate but did not have in mind the most natural objects of his bounty. He seems to have been completely confused as to his property and the disposition made of it. Within two or three days after entering the hospital and before he suffered a stroke he told the witness Wesley Rolen he had "deeded J. B. Rolen and wife everything he had."

The Circuit Judge seems to have been of opinion George Ray Rolen was withholding information about having taken the deceased at times in his car to buy intoxicants and that he was not being frank with the Court in testifying the deceased never mentioned a will either before reaching the attorney's office or on the way to the

hospital, after he had executed the will. The Court in its memorandum opinion characterized this as "strange" and, summarizing, said:

"The facts in this case do not show that the testator was in such condition that he did not know something about what he was doing; but he was in a strained mental condition due to his illness. The Court is of the opinion that his weakened mind, together with the undue influence in the company of the testator was such as to nulify any purported will. Certainly this is the kind of case that casts the burden on the testator (sic) to show there was no undue influence in procuring this will.

"It could happen, but seems so unlikely, that a person of sound mind without undue influence would suddenly change his mind and give his property to someone else when he had so consistently stated that he wanted his children to have his property. It seems to this Court that if a man was of sound mind and was not unduly influenced that he would certainly tell some of his close friends that he had changed his mind; or that he would talk to the beneficiary before or after the making of the Will."

■ We agree. Certainly, under all the proof and cir-cumstances, we can not say the evidence preponderates in favor of the proponent and against the findings and conclusions of the trial judge. Unless we can so find it is our duty to affirm. T.C.A. 27-303.

We can not accept as constituting the weight of the evidence the testimony of lay witnesses that, in ordinary conversation, Mr. Rolen appeared to be normal, in the light of his distressed physical condition which could be described as placing him in extremis, his illiteracy, his apparent failure to think of the natural objects of his

bounty to whom he had many times announced his intention and wish to give his property at his death, his untrue statement three days after the will was executed that he had deeded his property to J. B. Rolen, the unnatural disposition of his estate to the beneficiary, a third cousin, and, more importantly, his blunted mental condition as described by Dr. Sexton.

As in most cases of this nature, the true facts must be gleaned in part from the conduct of the parties and the circumstances tending either to support or disprove the charge of undue influence. When shown, weakness of mind becomes the most cogent of the circumstances tending to establish undue influence.

"The testator's strength of mind and condition of health may be essential subjects of inquiry in passing upon a question of undue influence, since a person of feeble intellect, in extreme old age, feeble health, his sight impaired, his hearing affected, or in extremis, is much more easily influenced by undue means than one in vigorous mental and physical health. Suspicious circumstances of every character demand, watchfulness for the prevention of imposition; and, as suspicions accumulate, the evidence to remove them must be proportionately increased in strength and clearness. The numerous cases which have been cited illustrate and apply this principle, and the refusal of the courts to give any exact definition of undue influence, or to fix the quantum of evidence necessary to be adduced by the proponents of a will to remove suspicion, indicates the purpose to let every case depend upon its own facts." Phillips' Pritchard Law of Wills, Section 143, page 148.

Although the authorities recognize the right of a testator to bestow his property upon a stranger in blood

if he so desires, the injustice or unnatural nature of the devise will be considered along with all the other circumstances to determine whether the testator was of sound mind or unduly influenced by the beneficiary. Phillips' Pritchard, Wills and Estates, Sections 113, 139; 57 Am. Jur. 291, Wills, Sections 398, 407.

Other circumstances to be considered in this case are the failure of the beneficiary to notify contestants that their father was in the hospital, that he had made a will or that he had died and the hasty probation of the will the day following the death of Mr. Rolen.

We think the Circuit Judge correctly found against the will. The assignments are overruled and the judgment is affirmed. Proponent will pay all costs.

Cooper and Parrott, JJ., concur.