# IN THE COURT OF APPEALS OF TENNESSEE
## MIDDLE SECTION AT NASHVILLE

FILED

Nov. 15, 1995

Cecil Crowson, Jr.
Appellate Court Clerk

IN THE MATTER OF:
ESTATE OF JIM EDEN, Deceased   )
                               )
GEORGIA BRADLEY,               )
                               )
    Plaintiff/Appellant,       )
                               )     Trousdale Chancery
                               )     No. 295
VS.                            )
                               )     Appeal No.
                               )     01-A-01-9501-CH-00005
BETTY LEWIS,                   )
AGNES HENDSLEY, and            )
BERTIE CARVER, Executors,      )
                               )
    Defendants/Appellees.      )


APPEAL FROM THE CHANCERY COURT FOR TROUSDALE COUNTY
AT HARTSVILLE, TENNESSEE

THE HONORABLE BOBBY CAPERS, JUDGE


For the Plaintiff/Appellant:

Thomas A. Travaglini
Madison, Tennessee

For the Defendants/Appellees:

A. Russell Brown
Lafayette, Tennessee


**AFFIRMED AND REMANDED**


WILLIAM C. KOCH, JR., JUDGE

# **O P I N I O N**

This appeal arises from a dispute over a will in which a 93-year-old man left his estate to three of his four surviving daughters. The daughter who was not named in her father's will challenged the validity of the will after her sisters propounded it for probate in the Chancery Court for Trousdale County. The chancery court transferred the case to the Circuit Court for Trousdale County where a jury found in favor of the will. The daughter who contested the will has appealed. We have determined that no reversible error was committed in the circuit court proceeding and, therefore, affirm the circuit court's judgment and remand the case to the chancery court for further probate proceedings.

## I.

Jim Eden was a lifelong resident of Trousdale County. He and his wife lived in and around Hartsville and raised twelve children. Mr. Eden's wife died in 1981, and Mr. Eden outlived most of his children - seven of whom had died by the mid-1980's. Mr. Eden lived alone after his wife's death and was largely self-sufficient. He took meals regularly with one of his daughters who lived next door and sought assistance occasionally from two other daughters, one of whom lived in Macon County and the other in Davidson County. He did his own banking, conducted his other business, and was a well-known figure around Hartsville.

Mr. Eden had prepared several different wills over the years. In 1986 when he was eighty-six years old, he requested a lawyer in Hartsville to prepare a will that left his entire estate to Betty Eden Lewis, Agnes Hendsley, and Bertie Carver, the three surviving children who had been of most assistance to him and his wife over the years. On October 30, 1986, Mr. Eden executed a simple, one-page will stating:

> After the payment of all debts and legal obligations of my estate, it is my wish that my daughters, Betty Eden Lewis, Agnes Sykes, and Bertie

> Eden Carver, have and use for the remainder of their lives all the property, personal, real and mixed, owned by me at my death, with the power to sell, mortgage, use or consume such property for their needs in their sole and absolute discretion. This property shall be divided equally between the parties mentioned above.

The will did not mention Mr. Eden's only surviving son, Jay Eden, who lived in Clay County and who was gravely ill or his oldest surviving daughter, Georgia Bradley, who had been living in North Carolina since 1952.

Mr. Eden maintained cordial relations with all his children during the last years of his life. His only surviving son died in 1988. He also saw less of Ms. Bradley than his other daughters because she lived over five hundred miles away, but Ms. Bradley talked with him by telephone and visited him periodically. Mr. Eden finally gave up driving his automobile following an automobile accident in the mid-1980's. His family began to notice a deterioration in his mental acuity by the summer of 1989. He was hospitalized in September 1989 and was later placed in a nursing home in Lebanon. He died on May 8, 1992, at the age of ninety-three. He left behind an estate worth approximately $150,000, including $130,500 in cash.

Mr. Eden was survived by four daughters. Mses. Lewis, Hendsley, and Carver filed a petition in the Chancery Court for Trousdale County to probate their father's will. Ms. Bradley contested the will on the grounds that her father lacked testamentary capacity and that he "unintentionally forgot to include her in the distribution." The chancery court transferred the case to the Circuit Court for Trousdale County for a jury trial in accordance with Tenn. Code Ann. §§ 32-4-101.[1] Following a trial in June 1994, a jury upheld the validity of Mr. Eden's will, and on August 8, 1994, the circuit court entered a judgment, stating that Mr. Eden was "of sound mind and disposing memory at the time he executed his will on

_____

[1]The transfer to circuit court was unnecessary since Tenn. Code Ann. § 32-4-109 (Supp. 1995) gave the chancery court concurrent jurisdiction with the circuit court to conduct the *devisavit vel non* proceeding. Neither party has taken issue with the decision to transfer the case, and it did not materially affect the outcome of the proceeding.

October 30, 1986" and remanding the case to the chancery court to complete the probate proceedings.

## II.

### CONTEST DISTINGUISHED FROM CONSTRUCTION

Will contests differ from will constructions. The two types of proceedings have different purposes and, accordingly, different rules of evidence and procedure. Will contests involve factual questions which are submitted to a jury, while will constructions involve matters of law for the court. It is thus important for trial courts to determine initially whether a particular controversy involves issues of contest or construction or both.

A will contest is a proceeding brought for the purpose of having a will declared void because the testator lacked the requisite mental capacity to make a will or because the will was procured by undue influence or fraud. *Stacks v. Saunders*, 812 S.W.2d 587, 590-91 (Tenn. Ct. App. 1990); *Muse v. Sluder*, 600 S.W.2d 237, 240 (Tenn. Ct. App. 1980). It is an in rem proceeding, *Lillard v. Tolliver*, 154 Tenn. 304, 323, 285 S.W. 576, 581-82 (1926); *Rogers v. Russell*, 733 S.W.2d 79, 84 (Tenn. Ct. App. 1986), that is intended to test only the external validity of the will. *Stacks v. Saunders*, 812 S.W.2d at 590; *Rogers v. Russell*, 733 S.W.2d at 84. All persons claiming an interest in a will may become parties to the proceeding, and the decision in a will contest is conclusive upon all the world. *Petty v. Call*, 599 S.W.2d 791, 793 (Tenn. 1980).

The purpose of a suit to construe a will is to ascertain and give effect to the testator's intention. *Williams v. Estate of Williams*, 865 S.W.2d 3, 5 (Tenn. 1993); *Warrick v. Wright*, 884 S.W.2d 126, 128 (Tenn. Ct. App. 1994); *Presley v. Hanks*, 782 S.W.2d 482, 487 (Tenn. Ct. App. 1989). Construction suits recognize the testator's right to direct the disposition of his or her property and thus, limit a court to ascertaining and enforcing the testator's directions. *Daugherty v. Daugherty*, 784 S.W.2d 650, 653 (Tenn. 1990).

Trial courts should decide contest and construction issues separately when they are presented in the same case. The better procedure is to first submit the contest to a jury who will decide the factual issues affecting the validity of the will. If the jury decides against the will, then the case is at an end, and the trial court should enter judgment accordingly. If the jury decides in favor of the will, then the trial court itself should decide the issues of construction since they are questions of law. *Presley v. Hanks*, 782 S.W.2d at 487.

In this case, Ms. Bradley challenged her father's will on the basis of his mental capacity to make a will and on his failure to name her specifically in the will. Accordingly, her suit presented both questions of contest and of construction. The issue of Mr. Eden's testamentary capacity presents a basic issue of contest. The next issue, however, presents an issue of construction insofar as Ms. Bradley asserts that the will is void as a matter of law for failing to disinherit her expressly or by necessary implication. We will therefore review the jury verdict on capacity first and then discuss the construction question.

## III.

### CONTEST OVER VALIDITY OF THE WILL

Ms. Bradley has raised several issues with regard to her will contest. She asserts that the trial court should have excluded two witnesses' testimony regarding their conversations with Mr. Eden about his will. She also challenges the denial of her requested jury instructions. Finally, she asserts that there was no material evidence to support the jury's verdict. We will address each of these issues in turn after describing the basic procedure to be followed on a will contest.

### A.

### PROCEDURE ON A WILL CONTEST

The question presented in a will contest proceeding is whether the paper offered for probate is or is not the testator's valid will. *Green v. Higdon*, 891 S.W.2d 220, 222 (Tenn. Ct. App. 1994); *Carver v. Anthony*, 35 Tenn. App. 306,

312-13, 245 S.W.2d 422, 425 (1951). The proceeding originated in the chancery practice of sending the case to a court of law to try the question of the validity of the will. *Green v. Higdon*, 891 S.W.2d at 222. The form of action is sui generis and regulated entirely by statute. *Jones v. Witherspoon*, 182 Tenn. 498, 503-04, 187 S.W.2d 788, 790 (1945); *Arnett v. Weeks*, 27 Tenn. (8 Hum.) 547, 549 (1847); *Cude v. Culberson*, 30 Tenn. App. 628, 637, 209 S.W.2d 506, 511 (1947).

When a contest is presented, the probate court should certify the will and contest to the circuit court for trial, Tenn. Code Ann. § 32-4-101; *Green v. Higdon*, 870 S.W.2d 513, 520 (Tenn. Ct. App. 1993), unless the contestant elects to have the contest tried in the probate court pursuant to Tenn. Code Ann. § 32-4-109. Once the contest has been set for trial, Tenn. Code Ann. § 32-4-104 (1989) requires the parties to formulate the issues to be tried "under the direction of the court." The general issue in a contest proceeding is "Did he make a will or not." *Green v. Higdon*, 891 S.W.2d at 222.

The proponents of the will have the initial burden of proving that the will was duly executed. *See In re Estate of Elam*, 738 S.W.2d 169, 171 (Tenn. 1987). This may be accomplished using the testimony of living witnesses and by showing that the will complies with all formalities of law. *See In re Estate of King*, 760 S.W.2d 208, 210 (Tenn. 1988). Proof of due execution makes out a prima facie case of the will's validity because it gives rise to a presumption that the testator was capable of making a will. *Curry v. Bridges*, 45 Tenn. App. 395, 407, 325 S.W.2d 87, 92 (1959); *Needham v. Doyle*, 39 Tenn. App. 597, 622, 286 S.W.2d 601, 612 (1955). Accordingly, the burden of proof then shifts to the contestant to prove the will is invalid for some reason. *Green v. Higdon*, 870 S.W.2d at 520; *Taliaferro v. Green*, 622 S.W.2d 829, 835 (Tenn. Ct. App. 1981).

In this case, the will was introduced by Ms. Bradley, the contestant, who proceeded to present her witnesses first. Once Ms. Bradley finished her case-in-chief, the will's proponents presented their case-in-chief, including the proof establishing the due execution of the will. While this order of proof may have been somewhat unorthodox, we do not find it to be reversible error because it did

not affect the outcome of the proceeding and because Ms. Bradley has not asserted that the will was not duly executed in accordance with the required legal formalities.

## B.

### ADMISSIBLE EVIDENCE IN CONTEST PROCEEDINGS

Ms. Bradley objected to the testimony of Ms. Carver and Mr. Eddie Taylor about conversations between each of these individuals and Mr. Eden. The substance of these conversations pertained to Mr. Eden's reasons for devising his estate in the manner in which he did.

Ms. Bradley asserts that Ms. Carver's testimony was inadmissible under Tenn. Code Ann. § 24-1-203 (1980), the so-called "dead man's statute."[2] The question of whether the "dead man's statute" bars admission of testimony as to transactions with or statements by the testator in a will contest proceeding was answered in the negative over a century ago. The Tennessee Supreme Court held that devisees, legatees, heirs, and distributees, are competent witnesses to prove the declarations or statements of the testator in a will contest proceeding. *Beadles v. Alexander*, 68 Tenn. 604, 607 (1877); *see also Davis v. Davis*, 74 Tenn. 543, 544 (1880); *Orr v. Cox*, 71 Tenn. 617, 619 (1879); *Patterson v. Mitchell*, 9 Tenn. App. 662, 665 (1929).

For the dead man's statute to apply, the proceeding must be by or against the executor in her capacity as such. *Newark Ins. Co. v. Seyfert*, 54 Tenn. App. 459, 479, 392 S.W.2d 336, 345-46 (1964). The statute, therefore, does not apply to a will contest proceeding because it is a proceeding in rem, not an action "by or against [an] executor as such." *In re Estate of Rollins*, Madison Law No. 3, slip op. at 3, 14 T.A.M. 8-11 (Tenn. Ct. App. Jan. 12, 1989) (No Tenn. R. App. P. 11

---

[2]Tenn. Code Ann. § 24-1-203 provides that "[i]In actions or proceedings by or against executors, administrators, or guardians, in which judgments may be rendered for or against them, neither party shall be allowed to testify against the other as to any transaction with or statement by the testator, intestate, or ward, unless called to testify thereto by the opposite party."

application filed). Thus, the statute does not bar Ms. Carver's testimony regarding her father's statements about his will.

Our inquiry cannot end with the finding that Ms. Carver was a competent witness. We must still determine whether Mr. Eden's statements themselves are admissible. If they are, the trial court properly overruled Ms. Bradley's objections to the testimony of both Ms. Carver and Mr. Taylor.

Testimony regarding a testator's oral declarations concerning his or her intent is suspicious and cannot be received as an aid to construction of a will. *See Marshall v. Marshall*, 25 Tenn. App. 309, 315, 156 S.W.2d 449, 453 (1941). This is because such testimony can be easily falsified and because the testator is no longer available to give his or her version of the matter. *Bowerman v. Burris*, 138 Tenn. 220, 222-23, 197 S.W. 490, 490 (1917).

A testator's intent and motives are not at issue in a will contest proceeding. A contest calls into question the testator's mental capacity to execute a will and accordingly requires the trier of fact to determine whether the testator knew the natural objects of his or her bounty and comprehended the extent of his or her property and the manner of its distribution. *Goodall v. Crawford*, 611 S.W.2d 602, 605-06 (Tenn. Ct. App. 1980); *McCormack v. Riley*, 576 S.W.2d 358, 360 (Tenn. Ct. App. 1978). It also requires the trier of fact to decide whether the testator was capable of knowing and understanding the effects and consequences of his or her actions. *In re Estate of Elam*, 738 S.W.2d at 171; *American Trust & Banking Co. v. Williams*, 32 Tenn. App. 592, 602, 225 S.W.2d 79, 83 (1948).

The testator's conversations and declarations, together with any particular fact from which the condition of the testator's mind at the time of making the will may be inferred, are competent on the issue of testamentary capacity. *Cude v. Culberson*, 30 Tenn. App. at 643-44, 209 S.W.2d at 514; *Melody v. Hamblin*, 21 Tenn. App. 687, 695, 115 S.W.2d 237, 242 (1937). Furthermore, proof of the reason for making a particular disposition is relevant to show that the testator

knew the force and consequences of his act. *In re Estate of Elam*, 738 S.W.2d at 172.

Thus a testator's statements regarding his personal and family relations and the pecuniary condition of his children are admissible in a will contest proceeding to rebut a claim that the exclusion of a particular heir indicates a mental infirmity. *Kirkpatrick v. Jenkins*, 96 Tenn. 85, 90, 33 S.W. 819, 821 (1896); *see also In re Estate of Parsley*, 864 S.W.2d 36, 39 (Tenn. Ct. App. 1988). Although an instruction to the jury limiting the use of such testimony to the question of mental capacity would have been proper, we find no error in the trial court's failure to give such an instruction when none was requested.

We have reviewed the portions of Ms. Carver's testimony objected to by Ms. Bradley. They relate to Mr. Eden's November 1986 statements regarding his relationships with his living children and the financial situations of his daughter, Georgia Bradley, and his son, Jay Eden. Although this testimony could not have been considered in a will construction case, it was properly admitted in this will contest proceeding for the purpose of demonstrating Mr. Eden's mental capacity around the time he executed his will.

We have also reviewed the portions of Mr. Taylor's testimony to which Ms. Bradley objected as inadmissible hearsay. Mr. Taylor was the attorney who drafted Mr. Eden's will, and his testimony concerned his conversations with Mr. Eden regarding the manner in which the will was to be written. Mr. Taylor testified that he asked Mr. Eden a series of questions to determine if he had the requisite mental capacity to make a will. Mr. Taylor's testimony regarding Mr. Eden's desires to leave his estate to Mses. Carver, Lewis, and Hendsley and to leave Ms. Bradley out of his will was thus offered for the purpose of showing that Mr. Eden knew the natural objects of his bounty, comprehended the manner of his property distribution, and understood the consequences of his actions. Thus, this testimony was properly admitted. *See Hickey v. Beeler*, 180 Tenn. 31, 38-39, 171 S.W.2d 277, 279-80 (1943); *In re Estate of Elam*, 738 S.W.2d at 172.

## C.

## THE SPECIAL JURY INSTRUCTIONS

Ms. Bradley also takes issue with the jury instructions. She contends that the trial court erred by refusing to give the two special instructions that she requested. While we do not find the special requests to be incorrect as a matter of law, we find that the trial court correctly informed the jury concerning the contest issues they were called upon to decide.

Will contests are oftentimes surrounded by confusion and uncertainty. *Hager v. Hager*, 13 Tenn. App. 23, 27 (1930). The only proper source of legal principles to guide the jury's deliberations is the trial court's instructions. *State ex rel. Myers v. Brown*, 209 Tenn. 141, 148-49, 351 S.W.2d 385, 388 (1961). Even though we give the trial courts leeway with regard to the substance of their instructions, *Mitchell v. Smith*, 779 S.W.2d 384, 390 (Tenn. Ct. App. 1989); *Thomas v. Hamlin*, 56 Tenn. App. 13, 37, 404 S.W.2d 569, 579-80 (1964), the instructions must still be substantially accurate statements of the law applicable to the issues the jury must decide. *Street v. Calvert*, 541 S.W.2d 576, 584 (Tenn. 1976).

Determining the proper scope and substance of jury instructions requires considering the parties' theories, the evidence in the record, and the law applicable thereto. *Solomon v. First Am. Nat'l Bank*, 774 S.W.2d 935, 940 (Tenn. Ct. App. 1989). Instructions given should not be inconsistent or confusing, *Betty v. Metropolitan Gov't*, 835 S.W.2d 1, 10 (Tenn. Ct. App. 1992), and should fairly define the legal issues involved. *See Smith v. Parker*, 213 Tenn. 147, 156, 373 S.W.2d 205, 209 (1963); *Grissom v. Metropolitan Gov't*, 817 S.W.2d 679, 685 (Tenn. Ct. App. 1991). Instructions that correctly state the law but have no basis in the facts of the case are improper. *See Betty v. Metropolitan Gov't*, 835 S.W.2d at 9; *Langford v. Arnold*, 707 S.W.2d 521, 523 (Tenn. Ct. App. 1985).

The specific instructions requested by Ms. Bradley concerned the proper manner in which to disinherit an heir. The question of whether an heir has been

disinherited, however, is a question of construction of the will, *see McDonald v. Ledford*, 140 Tenn. 471, 477-78, 205 S.W. 312, 314 (1918), which is a question of law for the court. *Presley v. Hanks*, 782 S.W.2d at 487. The jury in this case was properly presented only with the issue of capacity to make a will and not with any issues of will construction.

There is an additional reason for rejecting Ms. Bradley's proposed instructions. While a jury could decide that an unjust disposition reflects a lack of testamentary capacity, *Rolen v. Rolen*, 62 Tenn. App. 164, 170-71, 460 S.W.2d 355, 358 (1970); *American Trust & Banking Co. v. Williams*, 32 Tenn. App. at 606-07, 225 S.W.2d at 85, such a disposition is only one circumstance to be considered along with all the other evidence tending to reflect on the testator's mental capacity. *Haley v. Ogilvie*, 2 Tenn. App. 607, 614 (1926). The requested instructions would have been misleading to the jury since they did not focus on the relationship between Mr. Eden's dispositions and his testamentary capacity.

### D.
#### THE WEIGHT OF THE EVIDENCE

Ms. Bradley's final argument regarding the will contest relates to the evidentiary support for the jury's verdict. The same standard of review applies to jury verdicts in will contest proceedings that applies in other jury trials. Accordingly, we will review the record to determine whether it contains any material evidence to support the verdict of the jury. Tenn. R. App. P. 13(d); *Scott v. Atkins*, 44 Tenn. App. 353, 374, 314 S.W.2d 52, 61-62 (1957).

The will's proponents presented several witnesses who testified regarding Mr. Eden's mental state around the time of executing the will. These witnesses included one of Mr. Eden's daughters, the attorney who drafted the will, a paralegal who witnessed the signing of the will, and a bank teller who assisted Mr. Eden on several occasions regarding his lockbox and the renewal of his certificates of deposit. Each of these witnesses testified to their personal observations regarding Mr. Eden's competency and his ability to manage his own

affairs in 1986. Their testimony revealed a man who mowed his own lawn, as well as his daughter's and a neighbor's lawns, tended his own garden, drove his own car, and did his own banking.

In addition to these witnesses, the proponents presented the deposition testimony of Dr. Jack W. Carey, Jr., who had been Mr. Eden's family physician since 1979. Dr. Carey testified that besides general symptoms of "old age," Mr. Eden had exhibited no mental problems before becoming ill in 1989. He described the 1989 change in Mr. Eden's behavior as seemingly due to a condition of "sudden onset" such as a stroke.

Testators are not rendered incapable of making a will by mere physical weakness or disease, old age, blunt perception, or failing mind and memory, as long as their mind is sufficiently sound to enable them to know and understand what they are doing. *American Trust & Banking Co. v. Williams*, 32 Tenn. App. at 602, 225 S.W.2d at 83-84. The jury in this case had before it material evidence to support its finding that Mr. Eden's mind was sufficiently sound in 1986 to enable him to know and understand what he was doing when he executed his will.

## IV.
### CONSTRUCTION OF THE WILL

The circuit court in this case had concurrent jurisdiction with the chancery court to construe the will and should have done so after the jury found in favor of the will in the contest proceeding. Even though the trial court did not construe the will as it should have, we will decide the question here rather than remand the case for further time-consuming and costly proceedings. Since construing a will involves questions of law, *Presley v. Hanks*, 782 S.W.2d at 487, our review will be de novo on the record without any presumption of correctness.

### A.

Ms. Bradley's first argument is that a will that fails to name an heir is void as a matter of law. In this regard, she argues that her father's will should be declared void for failing to even mention her as a surviving daughter. We disagree.

The power to disinherit is part of the power of testamentary disposition. *Bradford v. Leake*, 124 Tenn. 312, 322, 137 S.W. 96, 98 (1911); *In re Estate of Jackson*, 793 S.W.2d 259, 261-62 (Tenn. Ct. App. 1990). In order to disinherit an heir, a testator must prepare a will that disinherits the heir by express words or by necessary implication. *McDonald v. Ledford*, 140 Tenn. at 477, 205 S.W. at 314. The will must also dispose of all of the testator's property because any property not devised will pass to all heirs under the laws of descent. *Bradford v. Leake*, 124 Tenn. at 321-22, 137 S.W. at 98; *Nichols v. Todd*, 20 Tenn. App. 564, 571, 101 S.W.2d 486, 490 (1936).

A testator has absolute power to make any division of his or her property regardless of how capricious or apparently unnatural such division may appear. *Burns v. Allen*, 93 Tenn. 149, 152, 23 S.W. 111, 112 (1893); *Bowerman v. Burris*, 138 Tenn. at 223-24, 197 S.W. at 491. Accordingly a testator's failure to provide for a living child in his or her will is ordinarily equivalent to a disinheritance of that child. *Burns v. Allen*, 93 Tenn. at 152, 23 S.W. at 112.

This general rule has been altered by statute for children born after the execution of a will. Yet, even in these cases, a court may still find that the child has been disinherited by unavoidable inference when the child is not mentioned in the will and the testator leaves all his property to someone else. *Reeves v. Hager*, 101 Tenn. 711, 716, 50 S.W. 760, 761 (1899). Thus, the Tennessee Supreme Court has held that a testator effectively disinherits both his existing and after-born children by executing a will leaving his entire estate to his widow without reference to any of his children. *Fleming v. Phoenix Trust Co.*, 162 Tenn. 511, 516, 39 S.W.2d 277, 278 (1931).

Mr. Eden's will on its face does not mention Ms. Bradley but passes his entire estate to Mses. Lewis, Hendsley, and Carver. Based upon the foregoing authorities permitting the disinheritance of a child without naming the child on the face of the will, we decline to find that Mr. Eden's will is void as a matter of law.[3]

## B.

Ms. Bradley also asserts that even if Mr. Eden's will is not void as a matter of law for failing to disinherit her explicitly, it still must fail because of the lack of competent evidence that Mr. Eden intended to disinherit her. Ms. Bradley's argument fails to recognize, however, that a testator's intention must be gathered from the face of the will itself. *Fariss v. Bry-Block Co.*, 208 Tenn. 482, 487, 346 S.W.2d 705, 707 (1961); *Bowerman v. Burris*, 138 Tenn. at 225, 197 S.W. at 491. Unless a will is suspicious on its face, this court must enter judgment according to the intention expressed in the four corners of the will.

A will providing for an unequal division of property among a testator's children is not inherently suspicious. Although a parent's natural affection for his or her children might prompt an equal testamentary division among them, the Tennessee Supreme Court has recognized that parents might favor one child over another. *See Bowerman v. Burris*, 138 Tenn. at 223, 197 S.W. at 491. Therefore, the fact that one or more children are disinherited without being mentioned in a will does not provide a basis for attacking a will. *Bowerman v. Burris*, 138 Tenn. at 223-24, 197 S.W. at 491; *Reeves v. Hager*, 101 Tenn. at 716-17, 50 S.W. at 761.

Extrinsic evidence cannot be used to vary the unambiguous terms of the will as written. *See Warrick v. Wright*, 884 S.W.2d at 128. Mr. Eden's will was not suspicious on its face even though it failed to mention Ms. Bradley or her brother

---

[3]The lawyer who prepared Mr. Eden's will testified that he knew of no requirement that a testator expressly disinherit an heir in his or her will. While this may be technically correct, the better practice is to include language in the will demonstrating that the omission of an heir was a deliberate part of the testamentary act. 3 Jack W. Robinson & Jeff Mobley, *Pritchard on the Law of Wills and Administration of Estates* § 1016 (5th ed. 1994).

who was living when the will was written. By leaving his entire estate to Mses. Lewis, Hendsley, and Carver, Mr. Eden disinherited Ms. Bradley, her brother, and any other heirs by necessary implication.

## V.

We affirm the jury verdict in favor of Mr. Eden's will. We also conclude that the will is not void because it failed to specifically mention Ms. Bradley and that the will effectively disinherits Ms. Bradley by unavoidable inference. In addition, we remand the case to the Chancery Court for Trousdale County for further proceedings and tax the costs of this appeal to Georgia Bradley for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE

CONCUR:


_____
SAMUEL L. LEWIS, JUDGE


_____
BEN H. CANTRELL, JUDGE